## Charles Dawson v. The Danbury Bank.

*Validity of title, by foreclosure of first mortgage: When assailed by suit on second mortgage, special averments must be set up.* A title obtained under the foreclosure of a first mortgage is presumptively prior in right to a second mortgage, and its validity can not be assailed in a suit to foreclose the latter, without special averments showing why it ought to be postponed.

*Foreclosure suit: General averment that defendant is a subsequent purchaser, etc., relates only to his subsequent encumbrance.* Where the second mortgage covered additional lands over which it was prior to an encumbrance held by the party claiming the former premises under the first mortgage, and said party was made a defendant under the mere general averment that he held or claimed some interest in the mortgaged premises or some part of them as subsequent purchaser or encumbrancer or otherwise, he may properly treat such averment as relating only to his subsequent encumbrance in the other lands, and his title to the first premises will not be affected by the decree . *Wurcherer v. Hewitt*, 10 *Mich*. 453.

*Possession of land by grantor, when notice of rights in him, to third parties.* A person remaining in possession of lands which he has conveyed by a mortgage which has been foreclosed against him will be presumed to hold subject to the title so created, and his possession will not be constructive notice of any other interest or title which he may have acquired, but which does not appear of record in him.—Affirming *Bloomer v. Henderson*, 8 *Mich*. 395.

*Heard May 7th and 8th. Decided May 25th.*

Appeal in Chancery, from Oakland Circuit.

This was a bill to quiet title.

The case was heard on bill, answer and proofs, and a decree rendered for complainant.

The facts are stated in the opinion.

*G. V. N. Lothrop* and *M. E. Crofoot*, for complainant.

1. Where a party represents a prior lien derived from the same source, he and his grantees are proper parties to a foreclosure bill.—*Story Eq. Pl.* § 186 *and notes; Id.* 193 *and notes; Hill. on Mort.* (3d ed.) *p.* 159, § 70; 11 *Wheat.* 304, 306; 11 *Paige*, 28, 29, 39, 40; 3 *Johns. Ch.* 459.

2. The defendants claim that none but subsequent encumbrancers are proper parties defendants to a foreclosure suit, and that nothing but the interests in the equity of redemption can be litigated and settled in such suit.

The following are among the cases cited: — 6 *Paige*, 635; 2 *Barb.* 23; 3 *Mich.* 448; 2 *Seld.* (6 *N. Y.*) 82; 5 *Id.* 502, 516.

In all of the above cases the question sought to be raised, and which the courts held could not be considered, was the litigation of the title of a third party set up in hostility to the title of the mortgagor.

3. Besides the question of these mortgages being cut off by the decree in the Moss case, the question of their being an equitable lien on the premises as against the title of this complainant notwithstanding the decree, arises.

We insist that whatever title passed to Drake at the foreclosure sale was but passing the title to Stewart, the mortgagor of Moss and others.

Drake purchased for Stewart, and as his agent.

The evidence shows that no possession was ever taken by Drake, or by Baines; nor was there any possession surrendered by Stewart, or taken from him; but he continued in possession of the premises claimed, as owner, as fully after the deed to Drake as before.

His possession and ownership was notice to all the world of his title. Drake could give no mortgage while Stewart was thus in possession, as owner, that could defeat Stewart's title. Nor could he make a deed, nor could Baines make a mortgage that would confer equities against the possessor's real title.

The consideration expressed in the assignment to the bank was merely nominal, $1; and defendants claim they were assigned to secure a pre-existing indebtedness.

Whatever title stood in Drake as purchaser at sale, or Baines as his grantee, was the title of Stewart, the mortgagor; and he could not himself, nor could his grantees, trustees or agents, hold an outstanding title to defeat the mortgage title.

And to this point we cite, 12 *Mich.* 346.

*Walker* and *Kent*, for defendants.

1. Defendants are not concluded by the decree in the foreclosure suit of Moss and others.

*a.* That suit was not a proper place to litigate the claims of Baines and Litchfield to the Pontiac Lot.

Their claim was prior to the mortgage of Moss and others, because derived through a prior mortgage, and it is well settled that a foreclosure suit is not the proper place to litigate claims to the mortgaged premises prior to the mortgage.—3 *Mich.* 448; 13 *Id.* 409.

The bill made them parties only as subsequent encumbrancers.

*b.* Litchfield did not, in his answer, aver the existence of the mortgages assigned to him on the Pontiac Lot, or claim any rights thereunto.

Baines did aver the conveyance from Drake to himself and the mortgage assigned to Litchfield, and sought to defend on this account, but clearly his action did not bind Litchfield.

The evidence shows that Litchfield's solicitor knew nothing of the defense set up by Baines. This defense ought not to have been litigated in that suit. Litchfield did not litigate it, and did not know that it was litigated by his co-defendant. Hence, so far as Litchfield is concerned, the case stands as though Baines' answer had not been put in.

*c.* Litchfield was not bound by the decree as to the mortgages held by him upon the Pontiac property because the question of their priority was not in issue between him and complainants in that suit.

The general rule is, that a decree is conclusive upon the parties to a suit only as to the point in issue.—12 *Barb.* 184; 14 *Conn.* 61.

And this doctrine is applied to cases like the one at bar in the following: 5 *Seld.* 502; 13 *Wis.* 10; 14 *Id.* 509 4 *Halsted Ch.* 571.

*d.* If Litchfield were bound by the decree in the former suit, still defendants would not be. They purchased during the pendency of the suit, and are bound by everything in the *lis pendens* filed, but this gave them notice only that a bill was filed to foreclose a mortgage subsequent to theirs, and the bill itself could have given them only the same notice. They could not have known that the validity of the mortgages they purchased were involved in that suit.—*Comp. L. p.* 1011, § 29.

2. The facts appearing in the case do not entitle the complainant to the relief asked, or to any relief.

*a.* Admitting that it is proven that Drake was the mere agent of Stewart in purchasing the premises at the sale under the Cooper foreclosure, still the purchase money was paid by Dey, and the mortgage was given as security therefor.

As against Dey, complainant had no equity more than against Cooper. Clearly, Dey, having paid a mortgage which was a lien upon the premises prior to complainant's title, was entitled to hold his mortgage against complainant's title, and defendants having, through Litchfield, received Dey's mortgage, have all his rights.

*b.* Defendants are *bona fide* purchasers of both mortgages. They gave up for them other valuable security. They received them without notice of complainant's alleged rights. The record shows these mortgages to be prior to complainant's title.

Defendants took these assignments subject only to those equities which existed between the mortgagors and mortgagees, but not to an unknown equity between the mortgagors and those from whom complainant's title comes. It was enough for defendants that they found the legal title to have been in the mortgagors, respectively, when the mortgages were made, and knew of no equities to the contrary.—8 *Mich.* 395.

DAWSON v. THE DANBURY BANK.

COOLEY J.

The complainant filed his bill to quiet the title to certain premises formerly owned by N. P. Stewart in the present city of Pontiac.

The facts upon which legal questions arise are the following:

In July, 1855, Stewart gave a mortgage on the premises to Cooper, Storm & Smith, which was foreclosed in chancery, and a decree for sale made September 27, 1857. Notice of lis pendens was duly filed in this suit.

May 21, 1859, Stewart gave another mortgage to Moss, Medbury & Duffield, covering the Pontiac Lot, and also a large amount of other real estate.

June 16, 1860, the Pontiac Lot was regularly sold under the Cooper, Storm & Smith decree, and bid off by Morgan L. Drake who had been acting as attorney for Stewart, and who undoubtedly bid for Stewart's benefit, and with an understanding that he should hold in trust for him. The sum bid was $1,050, which was procured from Alexander H. Dey, to whom Drake gave a mortgage to secure its re-payment. It would appear from Dey's testimony that Stewart also gave collaterals for this loan.

July 20, 1860, Drake deeded the Pontiac Lot to Baines, a brother-in-law of Stewart, and took back from him a mortgage conditioned for the payment of the Dey mortgage, and also four negotiable promissory notes of $1,000 each, the first of which fell due one year from date. We have no doubt the giving of the deed and the taking back of the mortgage were by direction and for the benefit of Stewart.

Stewart, during all this time, was in possession of the premises by tenants. Being indebted to Elisha C. Litchfield in a large sum, an arrangement was made by which the Drake and Baines mortgages were assigned to Litchfield as collateral security; the loan to Dey being paid

.by either Stewart or Litchfield — the evidence leaves it uncertain which. These assignments were made, one on the same day with the Baines mortgage, and the other a few days before, and it is highly probable that Litchfield was fully aware of the fact that the title to the lot in the hands of Drake and Baines was held in trust for Stewart.

August 30, 1860, Moss, Medbury and Duffield, filed their bill in chancery to foreclose their mortgage, making Drake, Litchfield and Baines, defendants, under the general allegation that they had, or claimed to have, some interest in the premises as subsequent purchasers, incumbrancers or otherwise. Litchfield, it appears, actually claimed rights in the equity of redemption in other parcels covered by this mortgage, and he filed his answer assailing the validity of the mortgage, but making no mention of his interest as assignee of the Drake and Baines mortgages.

Baines also put in an answer, by which he set up and relied upon the title acquired by Drake at the foreclosure sale. The two answers were filed by different solicitors, and there does not seem to have been any concert of action in the defense. The court sustained the mortgage, decreed a sale of the mortgaged premises to satisfy it, and, by a special clause in the decree, adjudged the Drake purchase to have been for the benefit of Stewart, and the title to the Pontiac lot, in Baines' hands, to be subordinate to the rights of complainants. The solicitors for Litchfield appear not to have been aware of this clause until the time for appealing had expired, and it is not shown that they were aware of the issue which had been made by Baines, by his answer. Under this decree, the premises were subsequently sold and bid in by complainants, who afterwards sold the Pontiac lot to the present complainant.

While these proceedings were pending, Litchfield transferred the Drake and Baines mortgages to the President,

Directors and Company of the Danbury Bank, for a valuable consideration, and we see no reason to doubt that they became purchasers in good faith. On their taking steps to foreclose one of these mortgages, the present bill was filed to quiet the complainant's title as against them.

The complainant insists, *first*, that the proceedings and decree in the Moss, Medbury and Duffield foreclosure suit, are a bar to any further claim by Litchfield or his assignees under these mortgages. If this position is correct, it must result either from the mere fact of Litchfield being made a party, or from the special clause inserted in the decree, and which has been referred to.

From the facts recited, it will be seen that Litchfield was not properly made a party in respect to the Drake and Baines mortgages, if the purpose was to obtain a decree postponing them to the mortgage then in suit. The title under which those mortgages were given, was, *prima facie*, paramount to the Moss, Medbury and Duffield mortgage, and if they sought to postpone them to their own, it would be necessary to make special allegations, setting forth the facts which gave the mortgage then being foreclosed an equitable precedence. This is a well settled rule of chancery pleading, and rests upon sound reasons. — *Wurcherer v. Hewitt*, 10 *Mich.* 453. In the absence of such allegations, the validity of the mortgages held by Litchfield, as against that to Moss, Medbury and Duffield, was not in issue, and could not be affected by the decree. We are not called upon to say whether this would be different if Litchfield had been privy to the defense made by Baines, as nothing of the kind is shown in the case, and he was certainly not bound to take notice of any other issue than that joined on his own pleading. His own defense was held to be unsustained, and he was to presume that the court would decree accordingly; but he had no right to suppose any clause would be inserted in the decree affecting his rights, which was not warranted

by the issue between him and the complainants. The fact that he was present, by counsel, when the sale to Moss, Medbury and Duffield was confirmed, has no significance, as the sale could not be more far-reaching in its scope than the decree, but, like that, must have been made subject to his rights under the two mortgages so assigned to him.

But complainant insists, *secondly*, that as Drake's bid was for the benefit of Stewart, the mortgage given to Moss, Medbury and Duffield, was not affected by it, and the two mortgages given by Drake and Baines, while they held the title for Stewart, stand on no different footing than if they had been given by Stewart himself, and must, in equity, be regarded as subsequent incumbrances by Stewart.

If the Drake and Baines mortgages were still held by Litchfield, and we should be satisfied that the evidence shows — as, perhaps, it does — that Litchfield was aware, when he took the assignment of these mortgages, that Drake had bid in the premises for Stewart's benefit, and paid the bid with money borrowed by or for Stewart, it is probable we should have no difficulty in holding that the Drake bid was fraudulent as to the Moss, Medbury and Duffield mortgage, and to be regarded in equity for the protection of their rights as a payment of the prior mortgage to Cooper, Storm and Smith. But it is not claimed that the defendants in the present suit, at the time they took an assignment of the Drake and Baines mortgages, had any knowledge of the circumstances under which Drake had acquired the title, or that he, or Baines after him, held it in any other way than for his own benefit. No fraud, either actual or constructive, can, therefore, be charged upon these defendants. So far as appears, they acquired title to the mortgages in good faith, and in reliance upon what appeared to be a regular title of record. They were not, therefore, to be affected by any equities,

not attaching to the mortgages in favor of the mortgagors, but existing against their mortgagors in favor of third persons. The suggestion that Stewart's possession of the premises was notice to them of defective title, can have no force, under the circumstances of this case. There is no claim that Stewart, while so remaining in possession, claimed rights adverse to the Drake and Baines mortgages; and the bank officers, if they had inquired of him on the subject, would probably have been informed by him that he did not. At any rate, they had a right to suppose that his possession was subordinate to the right of Baines, who appeared, by the record, to have acquired the title of Stewart through the first foreclosure. It was decided in *Bloomer v. Henderson*, 8 *Mich.* 395, that the possession by a grantor of the premises which he had conveyed, was no notice of any claim adverse to his conveyance; and the rule is not different where his title is divested by judicial sale, instead of his own conveyance.

The decree of the court below was erroneous, and it must be reversed, with costs, and the bill dismissed.

The other Justices concurred.