MARSHAL W. LOWE v. W. & L. E. RY. CO.

1. DEED OF RIGHT OF WAY WITH RESERVATION—NOTICE TO PURCHASERS.

L owning a farm through which a railway company desired to construct a railroad, executed a contract in 1880 whereby he agreed to convey to said company a right of way upon condition that said company construct an under cattle pass, connecting the portions of the farm divided by the railroad. In 1883, after the construction of the cattle pass, L conveyed to the railway company a right of way across his farm; the deed was without reservation and contained no reference to the cattle pass. The railroad was subsequently sold under foreclosure proceedings and the purchaser sought to fill up the cattle pass, which had remained in possession of L and his heirs from the time of its construction, claiming that the contract for its construction having been recorded in a record of deeds was of no effect in giving to subsequent purchasers notice of L's rights under it; and that possession of land retained by the grantor after he had made a deed, conveying the land, is not notice to any purchaser who takes from his grantee: *Held*, that L's possession was not inconsistent with his deed to the railway company of a right of way and that therefore, under the general rule that the possession of lands by a person is constructive notice of whatever right he actually has in the lands, his possession was notice to those who subsequently dealt with the land in question; that whether or not the railway company could be required to maintain the cattle pass, the original contract providing only for its construction, it had no right to fill it up.

2. CONTRACT BINDING THOUGH NOT SIGNED BY RAILROAD COMPANY.

Such a contract, containing stipulations to be performed by the railroad company, though signed only by the party of the first part, is as binding as though officers of the railroad company had signed it.

APPEAL from Huron County Common Pleas court.

BENTLEY, J.

Mr. Lowe brings this action to obtain an injunction against the defendant, The Wheeling & Lake Erie Railway Co., to prevent the company from filling up a certain cattle pass which now exists under its railway track connecting two parts of the plaintiff's farm. The company admits that it is its purpose to fill up the cattle pass and denies the right of the plaintiff to the injunction forbidding it so to do.

The case being appealed to this court, it has been tried before us upon the pleadings and statement of facts and the evidence adduced, including certain records from the county records here.

The land in question, the farm of the plaintiff, is the east half of lot No. 147 of sec. 4 of Townsend township, Huron county, Ohio. This farm originally contained about 100 acres of land. In 1880, the predecessor of the defendant company, The Wheeling & Lake Erie Railroad Co., desires to construct its line of road through this farm and applied to Alpha Lowe, the father of the present plaintiff, who then owned the farm, for permission so to do. He permitted the railroad company to construct its track through the farm and entered into a certain written contract with it by which he so permitted it. The construction of the road seemed to require a high grade across this farm of ten or twelve feet in height and the road so crossed the farm that it left to the south of the grade a part of the farm of seven or eight acres in extent, the rest of the farm being upon the north side of the grade. The contract was signed by Mr. Lowe only, and sealed by him, but when accepted by the railroad company under such circumstances, so far as the contract contained stipulations to be performed by the railroad company, it was bound to perform them, the same as if its officers had in fact signed the contract.

The contract provides as follows:

"Know all men by these presents, that I, Alpha Lowe, of Townsend township, in the county of Huron, state of Ohio, in consideration of one hundred and fifty dollars cash to be paid, and the further consideration of the public good and the benefits which will accrue to me from the construction of the Wheeling and Lake Erie railroad, do agree that said company may locate and construct its road upon or through my land situate in the county of Huron, Townsend township, state of Ohio, and described as follows, to-wit: Being the east half of lot No. 147, in the 4th section of said township, and being the farm on which I now reside, said company to construct an under cattle pass, if practicable, also one over crossing at grade, and if the said road shall be under contract or process of construction not later than two years from this date, I hereby covenant and agree for the above consideration on demand to convey to said company for railroad purposes for single or double track, sixty-six feet in width, that is to say, 33 feet on each side of the center of said road, as the same may be located or constructed by said company over or through said land by a good and sufficient deed of conveyance to said company, stipulated as hereinbefore and after, and binding on me and my heirs and assigns, said sum to be paid in full before possession taken and said sum to cancel a claim I now have against said company for ten dollars for injury to my corn.

"In witness whereof, I have hereunto set my hand and seal this 4th day of October, 1880.

[SEAL.]                            "ALPHA LOWE.

"Attest: R. H. Cochran, W. W. Graham."

After the making of this contract, this grade was made across this farm as stated. In apparent compliance with the contract the railroad company did construe a cattle pass some ten or twelve feet in height and with a clear space high enough so that a wagon with a rack might be driven through, thus creating a pass between the northerly part of the farm with that left upon the southerly line of the grade.

Thereupon, shortly afterwards, when the railway came to be fenced, the fence was made with reference to the use by the land owner of this cattle pass in connection with the farm, that is, the fences upon the line of the road were turned into the edges of the cattle pass on both sides so that there was free ingress and egress for anything that the owner wished to pass through there from one side of the farm to the other. That situation was maintained from that time until the present, and it is the cattle pass thus built and maintained that the present owner of the right of way designs to fill up.

In 1883, after the making of the cattle pass in apparent conformity with the stipulations of the contract, Mr. Lowe made a deed to the railroad company, and as its terms are important, at least, a portion of the terms, and as the deed is short, I will read it:

"Know all men by these presents, that we, Alpha Lowe and Maria, wife of said Alpha, of Townsend township, Huron county, Ohio, in consideration of the benefits to accrue to us from the construction of the Wheeling and Lake Erie railroad and the sum of one hundred

and fifty dollars in hand paid by the Wheeling and Lake Erie Railroad Co., here receipted, do give, grant, bargain, sell and convey unto the said Wheeling and Lake Erie Railroad Co., its successors and assigns, a strip or parcel of land containing one and 74-100 acres more or less, through the land of said grantor, situate in the east half of lot No. one hundred and forty-seven, (147,) section four, (4,) Townsend township, Huron county, Ohio, and which is described as follows:

"A strip of land sixty-six (66) feet wide commencing at the east boundary line of the lands of John G. Bott, being the west half of said lot on the west, and thence running south-easterly to the west boundary line of lot No. one hundred and forty eight (148) in said section on the east. Said strip or parcel of land is 66 feet in width, that is to say, 33 feet on each side of the center line of said railroad, as the same is located through said land from a point on the west boundary line of said land to a point on the east boundary line of the same as above described.

"To have and to hold said described strip of land to said, The Wheeling and Lake Erie Railroad Co., its successors and assigns for the purposes of said railroad and as its right of way."

Then follows the release of dower by Mrs. Lowe and the usual formalities in the execution of a deed.

This deed being delivered to the railroad company, was shortly thereafter duly recorded in the proper volume of records of this county. Before the making of this deed, the railroad company had mortgaged its entire line of property to certain persons in the East for a large sum of money, and that mortgage was duly recorded. After the making of this deed, in July, 1884, the mortgagees of the railroad company began an action in the United States court for the northern district of Ohio, eastern division, against the railroad company, for foreclosure of this mortgage, and such proceedings were had in that case that the mortgage was foreclosed, and the property thus mortgaged, ordered to be sold, and on the 23d day of April, 1886, the special master commissioner appointed by the United States court in that proceeding, sold, under the decree of the court, the railroad property to certain three persons named as trustees, and those trustees afterwards, for a valuable consideration, on June 25, 1886, conveyed the property thus purchased by them to the defendant in this action, The Wheeling & Lake Erie Railway Co.

The contract in question given by Mr. Lowe, was recorded, but recorded in the records of deeds, and it is claimed that that record, being in a volume not designated by the law, affords no constructive notice to this railway company of the existence of such a contract, and that the record itself is not receivable in evidence for any purpose; and it is claimed that the railroad company as well as these trustees were innocent purchasers of this property; that they had no notice, actual nor constructive, of the terms of this contract, or the obligation of the railroad company to either construct or maintain this cattle pass, and that therefore, whatever the rights of Mr. Lowe may have been as against the original railroad company, he cannot assert them against the present railroad company. I will state perhaps what I omitted to state, that Alpha Lowe having died, the title to the farm descended to the present plaintiff, Marshall W. Lowe, or was conveyed to him by deed; at least, Marshall W. Lowe now stands in the place of Alpha Lowe as to this transaction.

The plaintiff claims that whatever may have been the effect or want of effect of the record of this contract, yet the contract was made, and that, ever since the construction of this cattle pass, Mr. Lowe, the plaintiff, or his father, while each respectively held the title, was in the actual and notorious and apparent posses-sion of this cattle pass; that it connected the two portions of this farm, and that it was observable to any persons who came within sight of the railroad or of the farm at that point, and that therefore such possession was notice to the subsequent purchaser of the railway property.

The railway company deny that that was constructive notice to it and it also alleges that the contract itself did not require the *maintenance* of a cattle pass; that the contract simply required a cattle pass to be *constructed*, but was silent as to any maintenance of it. The counsel for the railway company, however, admits

that if this road were still in the possession of the original company with whom the contract was made, it would have no right or authority to fill up the cattle pass; that, although it had not, in terms, contracted to maintain it, yet it could not, at least, fill it up.

The plaintiff claims, however, that the contract, fairly construed, requires the maintenance as well as the construction of the cattle pass in question.

The counsel for the railway company in endeavoring to sustain its position regarding the want of constructive notice by possession, cited this rule; that while as a general thing, it is true that actual possession of real estate is constructive notice to every person and the world as to any real rights that the possessor has in the real estate, yet that there are exceptions to that rule and among them is this exception,—that the possession of land retained by the grantor after he has made a deed conveying the land, is not notice to any purchaser who takes from his grantee, because having granted the title to the land, it will be presumed that he is simply a tenant at suffrance of his grantee, and that a subsequent purchaser from the grantee has a right to so assume; but while that is, by the great weight of the authorities, the general rule of law, there are some cases that hold otherwise, apparently though, not the majority. As a matter of interest, I would say that it would seem that this rule is not followed, and apparently not recognized in *McLaughlin* v. *Sheppard* 32 Maine; nor in *Boggs* v. *Andrews*, 51 Maine, 161, nor in a certain California case—I think it is 25 California, nor in a case in 89 Illinois, 460, nor in 107 Illinois, 186, and the matter is also noticed in two Leading Cases in Equity, 184.

Now this general rule rests upon this proposition, that the grantor of a deed cannot claim possession in conflict with the terms of this deed; that where he is found in conflict with the terms of his deed, it may be presumed that he is simply a tenant at sufferance, and such possession is not notice to those who subsequently deal with the grantee regarding the land. And the question now is whether in this case the facts bring the parties within the operation of this rule.

I call attention to the terms of the deed. It is a deed which grants in the granting clause to the railroad company this strip of land; but in the *tenendum* clause it recites :

"To have and to hold said described strip of land to said, The Wheeling and Lake Erie Railroad Co., its successors and assigns, *for the purposes of said railroad, and as its right of way.*"

The scope and title then, which the railroad company took to that land was the title for the purposes of its railroad, and as its right of way. It was then not in every sense an absolute deed of the whole property for any purpose whatever for which the railroad company might see fit to use the land, but for the purposes recited.

Now, if this possession which the grantor so retained in the land was in conflict with the terms of his deed, his possession would come under the general rule which I have mentioned, and as against subsequent purchasers in good faith, from his grantee, he could not claim that his possession was constructive notice. But was the possession which he retained and which he had all these years in conflict with the terms of his deed?

It is not claimed in this action, by the defendant, the railway company, that the use of this cattle pass is inconsistent with the use of this land for the purposes of its railroad, and as its right-of-way; it makes no such claim as that either by pleading, or by proof offered, but it simply assumes the absolute right to fill it up regardless of the want of any necessity for so doing for the purposes of its railway.

It is a matter of common knowledge that these passes are frequently constructed and maintained under railway grades, and it is a use that is entirely consistent with the use of the right of way for railway purposes, and when the

plaintiff is allowed to retain such possession of so much of a mere right of way,. his possession is not in conflict with the terms of his deed, and it is consistent. with it, just as consistent as is his right to an over pass, or as the rights of any person to whom the railway company might allow a pass under its grades.

Among the cases cited in support of this general rule, that the grantor cannot. claim that his subsequent possession of the land granted, in conflict with the terms of his deed in constructive notice to the world, are many cases from Michigan, and no state hold any firmer to this doctrine as appears from the reports,. than that state, yet in a case which occurs in the 18 Mich., 367, the opinion on. page 377 and 378 says: " The counsel for plaintiff in error relied upon *Palmer* v. *Anderson*, 8 Mich., 395, and *Dawson* v. *Dunbar & Co.*, 15 Mich., 489, to show that where the grantor remains in possession after conveyance, he is to be regarded: as holding under his grantee and not by any other claim.

" Those cases hold that such possession after conveyance is not 'notice of any other claim as against third persons; but they do not hold that it is incompatible with any other right as. against the grantee, if any such existed, and is not inconsistent in fact, with the existence of the grant."

Now, these cases we think, recognize this distinction that I have endeavored: to point out. So that leaves the operation of the other general rule, which is. not denied, that the possession of lands by a person is constructive notice of whatever right he actually has in the lands and for the disposition of this case, it is not necessary to decide whether or not this contract should be construed as. requiring the railway company to maintain a pass. It is sufficient to show that. the contract required the company to make it, in the first instance, and following from that necessarily would be the impropriety and illegality of the act of the company to fill up the pass, the company that was bound by this contract to. make it, so that the original railroad company would have had no right whatever to fill up this pass, even if it was not bound actually to maintain it, that is, to. keep it in order, etc., and the plaintiff being in possession at this time, at the time of the sale and purchase of this property, we think such rights as he would have: in the premises as against the railroad company, might be maintained notwith-standing the purchase of the property by the railway company.

This contract, whatever may be the requirements, whatever acts it might. require, in the first place, is continuing so far as it was not performed by the making of the deed, as far as the grantor is concerned, and in this connection,. attention is called to the case of *Reed* v. *Sykes*, 27 O. S., 285 ; the third paragraph. of the syllabus being :

" The covenants of the vendee contained in such contract of sale, to assume and pay off said mortgage as part payment of the purchase money, are neither performed, satisfied, sur--rendered, nor merged by the mere conveyance to him by the vendor, in the absence of any-thing in the deed, or the acts of the parties showing that such covenants of the vendee have-been in fact performed or satisfied. "

Again in the case of *Brumbaugh* v. *Chapman*, 45 O. S., 368, in the opinion of the court, on page 375, this is said :

" The case of *Reed v. Sykes*, 27 O. S., 285, cited to us, is quite different from the one-presented by the record before us, and is not in conflict with what has just been announced.. It was there simply held that the deed did not execute a prior agreement of the vendee to, assume and pay an existing lien upon the property, that had been assumed by the vendee as. part of the purchase money. * * * As a rule, the deed does not execute any of the stipula-tions of the vendee as to the consideration to be paid for the property. Its office is to execute-the agreement on the part of the vendor, and the learned judge, in delivering the opinion in that case, was careful to observe this distinction, in the use of the language : "The obligation to pay the purchase money was not merged by the deed, which was only in performance on. the vendor' s part. * * * The convenant to convey is performed by the conveyance;. but convenants relating to other things than a mere conveyance, are not thus performed."

Now, in view of the open and notorious character of this possession and all the circumstances attending it, we think it would be grossly inequitable for the railway company to be allowed to fill up the cattle pass, and the finding and decree of the court will be in favor of the plaintiff and against the defendant.

*Andrews Bros.*, for plaintiff.

*Swayne, Swayne & Hayes* and *S. A. Wildman*, for defendant.