ANTONIA HARMS *et al.*

*v.*

MARY E. CORYELL.

*Opinion filed December 21, 1898—Rehearing denied February 9, 1899.*

1. BURNT RECORDS—*decree finding title in petitioner is conclusive on the parties.* A decree in a proceeding under the Burnt Records act finding title to be in the petitioner, as against the defendants, is as conclusive of the rights of the parties as if a bill had been filed to quiet title, and cuts off any defense which they might have made.

2. SAME—*effect of dismissal as to part of the parcels of land involved.* The dismissal of a petition under the Burnt Records act as to part of the parcels of land involved does not affect the force of the decree against parcels to which no adverse claim was made, as, under section 19 of that act, the court may enter a decree *pro confesso* against parcels of land as to which no demurrer or answer is filed and hear evidence or order a reference as to the others.

3. EQUITY—*relief against misdescription not granted as against bona fide purchasers.* A grantee is not entitled to relief for misdescription in his deed, as against *bona fide* purchasers from the grantor without notice, actual or constructive, of the grantee's rights.

4. NOTICE—*record of deed is notice only so far as description is correct.* The record of a deed is notice only so far as the premises are correctly described, unless mistake is apparent from the record itself.

5. SAME—*continued possession after decree is presumed to be in subordination to rights of successful party.* The continued possession of land by one whose title has been divested by a judicial decree is presumed to be in subordination to the rights of the party in whose favor the decree was rendered, and is not constructive notice of any rights or claims of the possessor adverse to the decree.

APPEAL from the Superior Court of Cook county; the Hon. JOHN BARTON PAYNE, Judge, presiding.

OLIVER & MECARTNEY, and SIMMONS & WINSTON, for appellants.

W. S. HARBERT, for appellee.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

This case has been here before, and is reported as *Coryell* v. *Klehm*, 157 Ill. 462. Some of the facts disclosed by the present record were presented by the record in *Webber* v. *Clark*, 136 Ill. 256, and some of the questions here involved were passed upon in the last named case. In *Coryell* v. *Klehm*, *supra*, it appears that the original bill herein was filed on March 24, 1886; that an amended bill was filed on May 29, 1893; and a supplemental bill was filed on October 18, 1893, the complainant being the present appellee, Mary E. Coryell, and the defendants, as finally brought in, being Charles Harms and George C. Klehm and their wives, and Antonia Harms, the daughter of Charles Harms, and George Chambers, trustee, as hereinafter stated. The wives of Harms and Klehm were made defendants, because they were supposed to have inchoate rights of dower in such interests in the premises involved as were held by their husbands. The deed, executed by William C. Grant to Klehm in January, 1883, was taken by Klehm for the benefit of Charles Harms, and whatever title was thereby conveyed was held by Klehm for the benefit of Harms. The deed subsequently made by Klehm to Antonia Harms was also made for the benefit of her father, Charles Harms, and was executed after the commencement of this suit and after service of process therein, so that Antonia Harms was affected with notice of appellee's equities in the subject matter of the suit under the doctrine of *lis pendens.* This controversy, there-

177—32

fore, is really between the appellee on the one side, and
Charles Harms on the other.

Demurrers were filed to said amended and supple-
mental bills and sustained by the lower court; and, there-
upon, appellee elected to stand by her bills, and the same
were dismissed for want of equity on January 3, 1895.
The appeal, when the case was here before, was taken
from this decree of dismissal, and the question determined
in *Coryell* v. *Klehm, supra,* was that the allegations of the
bill, as appearing upon the face of it, were sufficient to
justify the relief asked for. Our order therein was as
follows: "The decree of the Superior Court is reversed
and the cause is remanded, with directions to overrule
the demurrer to the bill, and to allow the bill to be
amended, if the complainant therein shall so desire, and
to give the defendants leave to answer, if they shall be
so advised by counsel." (Id. 485).

On December 9, 1895, the mandate from this court was
filed in the Superior Court of Cook county, and the cause
was re-docketed and re-instated in the latter court. On
February 15, 1896, Antonia Harms, and Charles Harms
and George C. Klehm and the wives of the two latter
filed their answer to the said amended and supplemental
bills. On May 12, 1896, appellee filed an amended bill,
and on May 16, 1896, the same was answered by the de-
fendants. Replication was filed, and, upon hearing had,
documentary and oral testimony was introduced. On
March 13, 1897, the Superior Court entered a decree, find-
ing that appellee had become vested with all the equita-
ble interest, right and title in and to said premises, and
that she was entitled to a conveyance thereof from the
defendants. The present appeal is prosecuted from such
decree by the appellants, Charles Harms, Antonia Harms
and George C. Klehm.

In *Coryell* v. *Klehm, supra,* we said (p. 484): "The title of
appellant, (the present appellee, Mary E. Coryell), as we
have already seen, is not barred or affected by the limi-

tation statute. She is now, so far as this 20 acres of land is concerned, the absolute owner of the entire interest in the equitable and beneficial title, interest and estate that was in its inception vested in Sayles and Walker, and she is entitled to a conveyance of the Grant-Klehm-Harms title, provided the material facts alleged in her bill of complaint are proved and no valid defense is established."

The decree here appealed from finds that all the material allegations in appellee's amended and supplemental bills are true; and we are of the opinion that the proofs in the case sustain the findings of the decree. The material facts thus established by the testimony are fully set forth in *Coryell* v. *Klehm, supra,* and will only be here adverted to so far as it may be necessary to understand the defense set up by the appellants since the remandment and re-instatement of the cause as above specified.

That defense is based upon an alleged mistake in the deed, under which Charles Harms claims to have derived his title to the 20 acres of land here in controversy, known, after the subdivision of the same and other lands by Sayles and Walker, as lot 4 of owners' subdivision, etc.; and also upon an alleged possession of said premises by Harms as affording notice to appellee of his claimed equities growing out of said mistake, or as operating to put her upon inquiry to ascertain such equities.

Charles Harms claims, that he went into possession of the tract here in dispute, containing 19.55 acres, in 1864 or 1865 as tenant of one Philip Beaubien, and remained in possession thereof until the execution of the conveyance of the same to Antonia Harms by George C. Klehm. He states that in 1866 he purchased said tract from Philip Beaubien, and received from him a deed therefor, dated, acknowledged and recorded on October 19, 1866. This deed is in evidence, and is the only deed ever made to Harms, which is presented as evidence of title to said tract of 19.55 acres, otherwise called lot 4, etc. It does not convey lot 4, but does convey an entirely dif-

ferent tract, described by metes and bounds, containing 16.73 acres, and lying north of and entirely beyond lot 4. It is asserted by the defendant Harms, that he never discovered this mistake in the description of the land in the deed until January or February, 1896, nearly thirty years after the execution of the deed. It will be observed that the mistake does not refer to the township or range or number of acres or point of beginning or a single call in the description, but the description in the deed of October, 1866, does not in any particular cover or conform to the description of the tract here in controversy.

The position of the appellants is that, prior to 1866, William Beaubien, Henry Beaubien, Philip Beaubien and Caroline Beaubien, children of Josette Beaubien and John B. Beaubien, her husband, owned 256 acres of land, of which lot 4 was a part, and made partition thereof among themselves, by which Philip Beaubien became the separate owner of a, certain tract of 50 acres including and embracing lot 4. It is thus conceded, that, in October, 1866, Philip Beaubien was the owner of lot 4. But there is no testimony except that of Charles Harms himself, an interested party, that Philip Beaubien intended by the deed of October, 1866, to convey to Harms lot 4, or that he intended to convey to him any other land than the tract of 16.73 acres described in the deed. The fact of mistake in description rests upon the evidence of Harms alone. To establish such a mistake the proof should be clear and convincing. (*Purvines* v. *Harrison*, 151 Ill. 219). The deed specifically recites, that the tract, which it conveys, contains 16.73 acres, while the tract claimed to have been purchased contains 19.55 acres. The consideration named in the deed does not correspond with the amount, which Harms swears that he paid for lot 4. The premises named in the deed are described as adjoining the land of one Draper, which was known to Harms to be located not only north of lot 4, but north of land lying north of lot 4. Harms was made defendant to

a burnt records proceeding instituted against lot 4 and
other lands by Thaddeus B. Beecher in December, 1872,
and then made search for his title papers, and took his
deed from Beaubien, and an abstract of title and other
papers, to his attorney to enable the latter to defend his
interests in such proceeding.   Again, between 1876 and
1883, he was called upon to consider the question of his
title in reference to the claim made upon this land by an
assignee in bankruptcy of said Beecher.   In view of all
these circumstances it is somewhat remarkable, that he
should have had this deed in his possession, or under his
control, for thirty years, and should not have discovered
that there was a mistake in the description, until this suit
had been pending for ten years, and a decree therein had
been taken to the Supreme Court and reversed.   We are
unable to say, that the proof of a mistake in the descrip-
tion is clear and convincing.

But, if it be true that there was a mistake in the de-
scription, the appellee had no notice of it, and acquired
her rights in lot 4 in good faith.   On March 22, 1875, she
loaned $3000.00 to John E. Sayles, and took his note of
that date for that amount payable to her order in six
months; and to secure said note, the payment of which
was afterwards extended to March 22, 1876, Sayles exe-
cuted to George Chambers, trustee, a trust deed upon lot
4, as described in the bill herein.   This trust deed was
recorded on March 24, 1875.   In *Coryell* v. *Klehm*, *supra*,
we said:   "At the time appellant loaned her money and
took the mortgage security in March, 1875, the abstract
of title was examined by her attorneys, and it showed
that Sayles was the owner of the premises."   That he
was such owner as against the appellant, Harms, the
deeds and proceedings on record most clearly established.

By deed, dated October 12, 1869, and recorded October
25, 1869, the children and heirs of Josette Beaubien and
John B. Beaubien, including Philip Beaubien, conveyed
about 300 acres of land, including the tract of 19.55 acres

here in controversy, to Silas B. Gassette. At this date
the records showed no title to the 19.55 acres, or lot 4,
in Charles Harms, because his deed, executed during the
year 1866 by Philip Beaubien, did not mention or describe
lot 4, or any part of it. It would appear, therefore, that
all of Philip Beaubien's title passed to Gassette. By
deed, dated November 27, 1872, recorded February 4, 1873,
Gassette conveyed said tract of 300 acres, including the
land embraced in lot 4, to Thaddeus B. Beecher. On De-
cember 21, 1872, Beecher filed a bill in the superior court
of Cook county under the Burnt Records act to establish
his title to about 220 acres of land, including the 19.55
acres here in dispute, and made the appellant, Charles
Harms, a party defendant thereto. An amended bill was
filed therein on April 23, 1873. Harms was served in the
Burnt Records proceeding and appeared, and filed a sworn
answer, which was signed by himself and wife, and by
Grant & Swift, as his solicitors, of which firm William
C. Grant was a member. In said proceeding there was a
reference to a master, who took testimony and made a
report, and on November 12, 1873, a decree was rendered,
finding that Beecher was the owner of said lot 4 contain-
ing about 20 acres, describing it by metes and bounds;
and it was therein decreed that the title to lot 4 was in
Beecher in fee simple. After this decree was entered,
establishing the title in Beecher, and by deed dated Jan-
uary 12, 1875, and recorded January 18, 1875, Beecher con-
veyed the premises here in dispute and other lands to
John E. Sayles and Albert H. Walker. By deed dated and
recorded January 23, 1875, Albert H. Walker conveyed his
interest in said premises to John E. Sayles, which inter-
est Sayles held on March 22, 1875, when he executed the
trust deed to Chambers to secure appellee's note.

Appellee's rights are to be determined by such notice
of outstanding equities, as she may have had on March
22, 1875. It matters not what fraud or speculation Gas-
sette may have been guilty of in procuring the deed from

Philip Beaubien and the other Beaubien heirs, or what fraud or deception may have been practiced by Sayles and Walker in establishing title in Beecher, who held the title in trust for them. The present record shows no fraud of any kind on their part. But there is absolutely no proof of any notice to appellee of any such fraud, or of any rights or equities in Harms, either by reason of a mistake in his deed, or otherwise. It may be that Harms was in possession of the premises when the bill in the Burnt Records case was filed; he swears that he had a tenant in possession, with whom he lived a part of each year, and in his answer he states that he was himself in possession. But, though a party to the Burnt Records proceeding, he therein made no claim to this land, nor set up the fact of a mistake in his deed, nor urged any other equities in his own behalf.

The decree in the Burnt Records case, finding the title to be in Beecher, was conclusive upon Harms who was a party thereto, and divested his title, if he had any, and any interest, by reason of possession or otherwise, which he may have had prior to the filing of the bill therein. (*Sholl* v. *German Coal Co.* 139 Ill. 21). A decree in a proceeding under the Burnt Records act, finding the title to land to be in one of the parties, is conclusive evidence of that party's title at the commencement of the suit, as against all the other parties to the proceeding. (*Bradish* v. *Grant*, 119 Ill. 606). The effect of such a decree, finding title to land in the petitioner as against the defendants, is to settle the title between the parties as effectually as though rendered on a bill to quiet title or remove a cloud from title, and cuts off every defense that either of the defendants in that suit might have interposed. (*Higgins* v. *Mulvey*, 136 Ill. 636).

It is true that the Burnt Records suit covered other tracts of land besides lot 4, and the proceeding as to these other tracts was continued, and dismissed finally on March 28, 1876. But, as to lot 4, no claim was made

in the answers by the defendants. Accordingly, the court, after reference and proof, entered a decree as to said lot, and allowed the reference to stand as to other parcels in respect to which there was a contest. The Burnt Records act provides for just such a case in the following words: "If the petition includes more than one parcel of land, and no demurrer or answer shall be filed as to some of said parcels, the court may enter a decree *pro confesso* as to those parcels as to which no demurrer or answer shall be filed, and hear evidence or order a reference as to the remaining parcels." (Sec. 19, chap. 116; 3 Starr & Cur. Stat. p. 3356).

Whatever right appellant, Harms, might have had, or may now have, against Philip Beaubien or his heirs to reform the deed of 1866, if there was a mistake in the description therein, he has no such right as against appellee, who occupies the attitude of a *bona fide* purchaser for a valuable consideration without notice. In cases of mistake in written instruments, as against *bona fide* purchasers for a valuable consideration without notice of the mistake, courts of equity will grant no relief. (*Sickmon* v. *Wood,* 69 Ill. 329; *Russell* v. *Ranson,* 76 id. 167; *Kellogg* v. *Hastings,* 70 id. 598; *Preston* v. *Williams,* 81 id. 176; *Karr* v. *Freeman,* 166 id. 299). The record is notice, so far as land is correctly described, and no further, unless it is apparent from the record itself that there is a misdescription. A grantee is not entitled to relief against such a mistake in description against parties who, for a valuable consideration, have purchased the property from the grantor without actual notice of the grantee's rights, unless they are in some manner chargeable with constructive notice thereof. (*Slocum* v. *O'Day,* 174 Ill. 215).

It is said, however, that after the decree in the Burnt Records suit was entered on November 12, 1873, Harms continued to remain in possession, and was in possession on March 22, 1875, when appellee took her mortgage; and that such possession was sufficient to put her upon in-

quiry as to the equities of Harms growing out of the mistake in his deed, and as to his right to have that deed reformed. It is difficult to see how inquiry of him on her part at that time could have brought to her notice a mistake, of which he himself had no knowledge until twenty-one years thereafter. His possession after the decree was merely a continuation of the possession which he had before the decree; and any right, which he acquired by reason thereof, was cut off by the decree. Such a possession did not operate as notice, or so as to require inquiry as to any supposed rights of the party in possession, even though the decree ordered no writ of assistance, particularly as the proceeding was still pending as to some of the land about which there was a contest. Where a title is divested by a judicial decree, a continued possession thereafter by the party, whose title is so divested, is presumed to be in subordination to the rights of the party in whose favor the decree is rendered. The party, whose title is so divested, will be treated and considered as holding his possession in subordination to the party in whose favor the decree is rendered, until he gives notice that his holding is adverse, and that he claims ownership in himself. (*Root* v. *Woolworth*, 150 U. S. 401). Here, no such notice was given by Harms. The present case is not different from the case where a mortgagor continues to occupy the premises after foreclosure sale; such occupation is not notice of any right acquired since the first entry, because the first entry determines the character and quality of the possession. (*Dawson* v. *Danbury Bank*, 15 Mich. 489; 16 Am. & Eng. Ency. of Law, p. 803). Possession by a mortgagor after decree of foreclosure is presumed to be subject to the title created by the mortgage, and is not constructive notice of any other interest or title which he may have acquired, but which does not appear of record in him. (*Dawson* v. *Danbury Bank*, *supra*). The same is true as to possession by the defendant after decree quieting title to land in the complainant, even though the

decree contains no provision in reference to the surrender of possession. (*Hintrager* v. *Smith,* 89 Iowa, 270; *Knudson* v. *Litchfield,* 87 id. 111). The possession of Harms, which was subsequent to the rendition of the decree in the Burnt Records case, did not operate as notice to appellee of any equities in him adverse to the decree, or so as to put her upon inquiry in relation thereto.

Without entering further into detail, or repeating the statements or discussion contained in *Coryell* v. *Klehm, supra,* we are of the opinion that "the material facts alleged in her (appellee's) bill of complaint are proved and no valid defense is established." Therefore, appellee "is now, so far as this 20 acres of land is concerned, the absolute owner of the entire interest in the equitable and beneficial title, interest and estate that was in its inception vested in Sayles and Walker, and she is entitled to a conveyance of the Grant-Klehm-Harms title."

Accordingly, the decree of the Superior Court of Cook county is affirmed.                                    *Decree affirmed.*