(No. 26063.—

T. E. RHOMBERG *et al.* Appellants, *vs.* THE TEXAS COMPANY *et al.* Appellees.

*Opinion filed March 16, 1942.*

FARTHING and SMITH, JJ., took no part.

WEEKS, SURLES & POTTER, for appellants.

GREEN & PALMER, WALTER E. WILL, and JOHN L. KAGY, (HENRY I. GREEN, ORIS BARTH, and ENOS L. PHILLIPS, of counsel,) for appellees.

CRAIG VAN METER, and FRED H. KELLY, *amici curiae.*

Mr. JUSTICE WILSON delivered the opinion of the court:

April 7, 1908, A. L. Rhomberg was the owner in fee simple of a parcel of real estate in Marion county described as the "Southwest Quarter (SW¼) of the Northeast Quarter (NE¼), Section 30, Township 2 North, Range 2 East of the 3rd P.M." On the day named, Rhomberg con-

veyed this tract, together with the southeast quarter of the northwest quarter of the same section, by warranty deed to J. F. Hickman. This litigation presents for decision the construction of the reservation immediately following the description of the land: "reserving however with the right to mine but without the right to break the surface all the coal & minerals underlying said SW NE & SE NW 30, 2N. 2E. of 3rd P.M." April 16, 1908, Hickman, the grantee, conveyed by warranty deed the forty acres involved in this action to Thomas D. Stroup. This deed contained the following language: "Reserving however, with the right to mine but without the right to break the surface, all the coal and minerals underlying said S.W. N.E. containing forty acres more or less situated in the County of Marion, in the State of Illinois." March 6, 1937, Stroup executed an oil and gas lease to Harry F. Corbin, who, in turn, assigned it to the Texas Company. June 6, 1939, T. E. Rhomberg, together with five other heirs-at-law of A. L. Rhomberg, deceased, and their spouses, executed an oil and gas lease covering the property in controversy to Dallas E. Hawkins and Harry Lee Carter. April 13, 1940, the plaintiff, T. E. Rhomberg, together with the other heirs-at-law of A. L. Rhomberg, deceased, and their spouses, and Hawkins and Carter, filed a complaint in the circuit court of Marion county against the defendants, the Texas Company and Stroup, charging that the deed from Rhomberg to Hickman reserved the oil and gas in and under the land, with the right to ingress and egress for the purpose of entering upon and removing the oil and gas by any suitable means, including the right to mine and drill, to use such portions of the surface estate as is necessary to mine and drill therefor, and to produce and remove the oil and gas from the property for sale and such other uses as are generally necessary incident to the production and sale of oil and gas. Plaintiffs alleged, in the alternative, that if the deed from Rhomberg to Hickman be deemed ambigu-

ous, it was subject to the possible construction that the oil and gas, as well as coal and other minerals, under the land, were reserved and excepted from the conveyance, and that title thereto with the right of ingress and egress for the purpose of producing and selling them was retained by the grantor, Rhomberg. Accordingly, plaintiffs claimed to be the owners of the oil and gas in and under the land with the right to enter upon, mine, drill for, produce and sell. Additional allegations are that the defendants had denied their rights and withheld from them the possession of the land for these purposes, and that the record of the oil and gas lease from defendant Stroup to Corbin and the latter's assignment of the lease to the Texas Company constituted a cloud upon plaintiffs' title. The relief sought was (1) the appointment of a receiver with authority to make a contract, or contracts, for the drilling of four wells for the production of oil and gas from the same strata as the wells on adjacent property are producing from; (2) a decree adjudging the superiority of plaintiffs' rights, title and claims in the oil, gas and minerals over any rights, title or claims of the defendants; (3) a permanent injunction restraining the defendants from using the property for the purpose of exploring for and removing oil and gas therefrom, and from interfering with plaintiffs' exploration, development, production, removal and the sale of oil and gas, and (4) a declaration that the lease executed by Stroup to the Texas Company is void against the rights of plaintiffs, and its removal as a cloud upon the title. By their answers, the defendants denied the material allegations of the complaint and averred that the meaning of the language and the intention of the parties to the deed from Rhomberg to Hickman were that the property in the oil and gas underlying the land should pass to the grantee in the deed and, in consequence, only such rights were reserved to mine for coal and minerals as could be exercised without breaking the surface of the ground. Defendants asked no affirm-

ative relief. The Texas Company denied, however, that its claim and assertion of right to use the premises for the purpose of exploring for or producing oil was wrongful, that the removal of oil and gas therefrom would be wrongful, and that any use of the surface of the property, consistent with the deed and the oil and gas lease, would be wrong. Evidence was heard, and the chancellor entered a decree finding that the plaintiffs had (1) no right, title or interest in or to the oil and gas in or under the forty acres in question; (2) no right to drill for or attempt to recover the oil and gas, and (3) no right to enter upon the surface of the premises for any purpose. From the decree dismissing the complaint for want of equity, the plaintiffs prosecute this appeal.

Plaintiffs introduced in evidence an abstracter's take-off of ninety oil and gas leases executed during the years 1905, 1906, 1907 and 1908, covering land in Marion county, but not in the township where the property in controversy is located. Each of these leases was dated prior to April 7, 1908, the day the deed under consideration was executed, and none of the parties to the leases are parties to this action. This testimony was introduced to show the general oil activity in the vicinity of Sandoval, in Marion county, and, in particular, that the leasing of land for oil and gas was a matter of general knowledge in the area at the particular time, and for the additional purpose of disclosing one circumstance surrounding the parties when the deed in controversy was executed. Although there may well have been a modest amount of oil activity in southern Illinois in 1908, this part of the State was then, and for many years thereafter, recognized as one of the great coal mining areas of the country, and coal mining was the predominant industry of this section of Illinois.

Hickman, the grantee in the deed from Rhomberg, testified that there were extensive coal mining operations around Sandoval about 1908; that the mine at Odin, four

miles from the property in litigation, was approximately 700 feet deep; that Lafe Somerville who negotiated the sale of Rhomberg's land was interested in this mine, and that he was personally engaged in acquiring coal rights.

Floyd Williams and Clarence G. Farthing who had long been familiar with the land in litigation testified in behalf of plaintiffs that there were outcroppings of coal in the vicinity, the nearest to Stroup's land being about four miles distant, and that such strip mines were matters of general knowledge in the community. Referring to an outcropping of coal on a farm within four miles of Stroup's property, Williams testified that a half-acre was dug up, observing that the ground was left practically worthless and could not thereafter be farmed. Farthing said that the dirt was removed to obtain the coal and that the land could not be farmed afterwards without a thorough overhauling. Thomas D. Stroup who purchased the land from Hickman in 1908 has since had possession, using the land for agricultural purposes. Stroup testified that at the time there was a coal mine in operation at Odin, 700 feet deep, and that there were places described as shallow veins of soft coal taken out by individuals to fire threshing machines and to burn in their stoves. He added that although there was leasing near Sandoval, there were no oil wells and drilling in the immediate community where the land in question was situated.

To obtain a reversal of the decree, the plaintiffs contend that the language of the reservation, as a matter of law, reserved the oil and gas under the land, together with the right of ingress and egress to produce it. The defendants, to sustain the decree, maintain that the unambiguous language of the deed discloses that oil and gas rights were not reserved. The primary purpose in construing deeds is to ascertain the intention of the parties from a construction of the instrument in controversy. (*Haughn* v. *Haughn,*

296 Ill. 305; *Anderson v. Stewart,* 285 id. 605.) Since it cannot be presumed that words or terms in a conveyance were used without a meaning, or having some effect accorded them, a construction will be adopted, if not in contravention of some positive rule of law, giving effect to the instrument and to each word and term employed, rejecting none as meaningless, repugnant or surplusage. (*Tallman v. Eastern Illinois and Peoria Railroad Co. post,* p. 441; *Magnolia Petroleum Co. v. West,* 374 Ill. 516; *Farmer v. Reed,* 335 id. 156; *O'Donnell v. Snowden & McSweeney Co.* 318 id. 374; *Kinder v. LaSalle County Carbon Coal Co.* 310 id. 126; *Higinbotham v. Blair,* 308 id. 568; *Mittel v. Karl,* 133 id. 65; *Lehndorf v. Cope,* 122 id. 317.) Here, the expressions "with the right to mine but without the right to break the surface" and "coal and minerals," in the deed from Rhomberg to Hickman, must be considered together and effect given to each and not merely to the latter, as plaintiffs strenuously insist. Recourse to the deed from Rhomberg to Hickman and the deed from the latter to Stroup discloses that no right of entry upon the land conveyed was reserved but, instead, the language employed plainly prohibits the breaking of the surface of the ground in the exercise of any right to mine coal and minerals. Plaintiffs concede that directional drilling was unknown in 1908, not having been discovered until about 1930, and that the only way then known to produce oil was to drill for it. Admittedly, drilling for oil requires the breaking of the surface of the premises on which oil operations are conducted. If the language "with the right to mine, but without the right to break the surface, all the coal and minerals underlying" the described land, were not in the reservation, plaintiffs would have the right to enter through the surface to extract "coal and minerals," as this right is implied from a grant of minerals, but with the quoted portion of the reservation being explicit in the extreme, the right

ordinarily implied is expressly excluded. The parties to the deed knew, and indeed it is a matter of common knowledge, that coal can be removed from the ground by lateral mining operations which will not disturb the surface. In particular, coal operators mine tracts consisting of hundreds of acres of coal by means of underground galleries and, in many instances, the coal is sold independent of the surface, which allows such operators to mine it. It is also well known that "strip mining" was in vogue for a considerable period of time in central Illinois, and it is clear that "strip mining" would constitute a breaking of the surface within the contemplation of the reservation in the deed. Indeed, "strip mining" was a recognized mode of obtaining coal by breaking the surface. The language of the reservation in the present case shows that the primary purpose of the reservation was to retain the right to recover "coal and minerals" by a process which would not break the surface. It is apparent that it would be an illogical deduction to hold otherwise for the reason that if the grantor had intended to reserve the right to drill for oil a breaking of the surface for the purpose of sinking wells would necessarily result. Had the words "without the right to break the surface" been eliminated from the reservation a different proposition might have presented itself.

Reliance is placed by plaintiffs upon authorities from other jurisdictions to the effect that a reservation of "minerals," in legal contemplation, includes oil and gas. A decision as to whether "minerals" include oil and gas is not necessary to the determination of whether plaintiffs are entitled to the relief prayed for in their complaint, and this opinion is not to be construed as defining the term "minerals." Here, plaintiffs are seeking to go through the surface when their predecessor in title (Rhomberg) expressly contracted that he would not attempt to enforce the right to mine all the coal and minerals underlying his

land by operating from the surface immediately above. The word "mine" is indicative of the intention that the right to drill was not reserved.

Plaintiffs urge that if the reservation did not except oil and gas the deed is ambiguous and that proof of the surrounding circumstances discloses the intention of the parties was to include, rather than exclude, oil and gas. The reservation does not contain either a patent or latent ambiguity. The language used in the reservation very clearly expresses the intention of A. L. Rhomberg, namely, that he retained the ownership of "coal and minerals" under the land he was conveying, but he covenanted that in extracting the coal and minerals reserved he would not break the surface of the land he was conveying. Any change of circumstances in future years which would prevent him from mining coal and minerals by methods other than breaking the surface could not operate to nullify or void the covenant not to break the surface. The plaintiffs as his heirs, are equally bound.

Both plaintiffs and defendants place reliance upon *Kinder* v. *LaSalle County Coal Co. supra.* In the case cited, James Cowey and his wife, on March 25, 1867, conveyed to the Chicago Coal Company "all the bituminous or stone coal, together with the right to mine the same, underlying" 1045 acres in LaSalle county. Following the grant by legal description, the *habendum* clause recited: "Said party of the first part [the grantors] also hereby grants, conveys, quit-claims and releases to said party of the second part, its successors and assigns, all the rights in or title to the oil and minerals, of every description, underlying the above and foregoing lots, tracts and parcels of land which he owns or is now possessed of, to have and to hold the same forever." May 17, 1869, Cowey and his wife conveyed by warranty deed 89 acres of the same land to James Kinder, "reserving and excepting to said party of the first

part all bituminous or stone coal and other minerals, as well as all petroleum oil, in, upon or underlying said premises above described, together with the right to mine and raise the same." On the same day, Cowey and his wife conveyed 106 acres by another warranty deed to William Burrell, with the same reservations. Plaintiffs, the successors in interest of the grantees, Kinder and Burrell, claimed to be the owners of the surface of the land, above the coal, enjoying the right to remove therefrom the sand, gravel, clay, shale and limestone. The defendants, successors in title to the Chicago Coal Company, contested plaintiffs' claim of ownership, averring that they owned the sand, gravel, clay, shale, limestone and other mineral underlying the top soil. The decree rendered found that the deed from Cowey to the Chicago Coal Company conveyed only minerals which had to be taken out by mining operations; that the parties to the deed did not intend by it to pass title to any part of the surface; that limestone was a part of the surface and title thereto remained in Cowey, and that by his deeds to Kinder and Burrell he intended to convey, and the grantees intended to acquire, all the surface, including limestone. Plaintiffs were, therefore, adjudged the owners in fee of the surface, having the right to use and remove the limestone, sand, gravel, clay and shale, their title was quieted and defendants were enjoined from asserting title. Upon appeal, the defendants urged that by a grant of "minerals of every description," limestone, which is a mineral, passed to Cowey's grantee, the Chicago Coal Company. Rejecting the argument advanced and affirming the decree, this court said: "The granting clause of the deed [from Cowey to the Chicago Coal Company] conveys only the coal, 'together with the right to mine the same,' and the quit-claim clause of 'all minerals of every description' underlying the land described cannot reasonably be construed to embrace minerals other than such as could be removed by mining operations under-

ground, which would not destroy the surface for agricultural purposes. It is altogether reasonable to presume that Cowey and his grantee had no thought of limestone, sand and gravel as minerals. They knew those were on or near the surface and were of an entirely different nature from coal and oil,—the minerals specifically mentioned in the deed and which could be mined by underground methods. Two years after Cowey made the deed to the Chicago Coal Company he conveyed the land in controversy to Kinder and Burrell, reserving 'all bituminous or stone coal and other minerals, as well as all petroleum oil, in, upon or underlying said premises above described, together with the right to mine and raise the same.' By that reservation the grantor meant and intended to except from the grant what he had conveyed to the Chicago Coal Company, and the words 'the right to mine and raise the same,' show the reservation was intended to be limited to minerals which could be mined and raised by underground workings without destruction of the surface." Here, the language in Rhomberg's deed to Hickman, "without the right to break the surface" of the ground is infinitely stronger than the words "the right to mine and raise the same." Although the facts are not parallel, the *Kinder case* is analogous to the case at bar and sustains the defendants' contentions and the decree rendered in their favor.

To grant plaintiffs the right to go upon the land and take oil from underneath the surface would be in direct violation of the covenant of A. L. Rhomberg, plaintiffs' predecessor in title, that he would not break the surface in removing his "coal and minerals." It is claimed the defendants are exploring for oil upon these lands, but that would be within their rights. The covenant not to break the surface was to prohibit the holder of the title to the property reserved from entering upon the lands and interfering with the surface in the utilization of the "coal and minerals" thereunder. Conversely, the covenant does not

prohibit the owner of the land from breaking the surface. Admittedly, plaintiffs' coal cannot be taken by others, and they have the right to prevent it being punctured with holes materially affecting its value either for mining by themselves or by a purchaser. When, if ever, the defendant oil company produces oil from a stratum above the coal or by going through the coal the question of plaintiffs' right to bring an action against it, either as a trespasser or a converter, or otherwise, will be presented for decision. Manifestly, the allegations of the complaint are insufficient to entitle plaintiffs to injunctive relief solely because the defendant oil company is drilling on the surface of land not belonging to them. Plaintiffs are prohibited by the reservation from entering through the surface to reach whatever mineral rights may be covered thereby, and, so far as the record discloses, the defendant oil company has not yet invaded those rights.

*Amici curiae* maintain that oil and gas rights can be conveyed or reserved without conveying or reserving any surface rights in the same tract of land. It is admitted that this issue was not directly presented to the court. Our conclusion that the reservation covered only coal and minerals which could have been mined without breaking the surface renders unnecessary consideration and disposition of this contention. It also becomes unnecessary to consider certain abstract questions of law advanced by plaintiffs, propositions not pertinent to the decisive issue in the present case.

The decree of the circuit court is right, and it is affirmed.

*Decree affirmed.*

FARTHING and SMITH, JJ., took no part.