(No. 30753.—

CLARENCE T. SMITH, Syndicate Trustee, *et al.*, Appellees, *vs.* OAKIE GRUBB *et al.*, Appellants.

*Opinion filed January 19, 1949—Rehearing denied March 15, 1949.*

452

R. E. Boley, of Olney, and Mills, Umfleet & Mayberry, of Fairfield, for appellants.

Donovan D. McCarty, of Olney, and Sumner & Lewis, of Lawrenceville, for appellees.

Mr. Justice Wilson delivered the opinion of the court:

The circuit court of Richland County construed a deed, dated June 4, 1936, from John W. Grubb, now deceased, to Clarence T. Smith, Syndicate Trustee. From a decree adverse to them, Oakie Grubb and his three codefendants prosecute this appeal. A freehold is directly involved.

On April 15, 1936, John W. Grubb owned eighty acres of land, in Richland County, in fee simple. On the day named, Grubb executed an oil-and-gas mining lease to R. Z. McGowan, reserving to himself, the lessor, a one-eighth part of all oil and gas produced, as a landowner's royalty. This deed was caused to be recorded on May 9, 1936. McGowan assigned the lease to the Pure Oil Company. On June 4, 1936, Grubb executed the deed in controversy to Clarence T. Smith, described as Syndicate Trustee. The deed recites a consideration of $100 paid by Smith to whom Grubb conveyed "an undivided one half of one eighth interest in all of the oil and gas now, or at any time hereafter lying in or under the following described tract of land, * * *." Following the legal description, the deed recites, "It is hereby expressly declared that Whereas, the land particularly described in this conveyance is understood to be subject to an oil and gas mining lease in favor of R. Z. McGowan, his heirs, executors, administrators and assigns, it is intended that said outstanding lease is fully embraced in general terms of this conveyance so as to pass to and vest in the said Clarence T. Smith, Syndicate Trustee, one half of one eighth interest, not only in oil and gas, but also of royalties therein reserved to the lessor, precisely as if the said Clarence T. Smith, Syndicate Trustee, had been at the date of making of said lease the owner in fee of an undivided one-half interest in and to the lands described and hence one of the Lessors therein."

From the testimony of Smith, a lawyer who lived in Flora, and the deposition of C. T. Montgomery who, in June, 1946, was a notary public and well acquainted in the

neighborhood where Grubb resided, it appears that, on the morning of June 4, 1936, they repaired to Grubb's farm, located six or eight miles south and west of Noble. Grubb and Smith discussed leases taken by the Pure Oil Company in the general neighborhood and the possibilities of drilling test wells. Smith told Grubb he was buying royalty for a group of businessmen in Flora and was acting as trustee for the so-called syndicate. To Grubb's inquiry as to what interest he was buying, Smith replied that he was purchasing one half of the one-eighth royalty. Smith later learned from Montgomery that some royalties had been sold in the neighborhood for fifty dollars for forty acres. Smith testified he was aware of leases to the Pure Oil Company containing a provision that the lessee would pay the landowner one eighth of all oil and gas produced from the land, adding "all Mr. Grubb had was his right to demand and receive from the Pure Oil Company one eighth of the oil and gas which is the royalty interest under the lease." According to Smith, Grubb said that he would sell him the royalty interest, that is, one half of the royalty which he had left. Montgomery testified that Smith offered Grubb eighty dollars for "half of your royalty, or a one-half of the one-eighth that you have left." In the afternoon, at Montgomery's suggestion, he raised this offer to $100 for a one-half interest in Grubb's eighty acres. Smith testified, further, that he prepared the mineral deed and read it to Grubb; that they examined the deed together and Grubb asked him to explain its exact meaning; that he answered, "Mr. Grubb, you are selling one half of the mineral rights to me, and under this deed I am entitled to one half of the oil royalty that is paid to you by the Pure Oil Company under this lease;" that he also told him if oil was discovered on his farm he and Grubb would each receive one half of the royalty; that, after re-reading the second clause of the deed to Grubb, he said, "in other words, we become partners in any oil produced on your land," and that Grubb replied, "all right," and signed the

deed. Smith added, "I wrote him a check for $100 and left." Montgomery's testimony corroborates Smith. He testified that both Grubb and Smith understood that the Pure Oil Company had a seven-eighths interest in the oil and gas and that Grubb had only one eighth left; that Smith told Grubb he was buying "half of their one-eighth, half of what they [Grubb and his brother, Henry, who, apparently, also sold a part of his royalty interest to Smith] had left, and they understood, I suppose, what they were selling. They couldn't help but understand it," and "he [Smith] said, 'I'll give you one hundred dollars for half of your royalty —half of what you have left.' It tickled both of them when they found out they were going to get twenty dollars more than what they first agreed on."

Thereafter, on June 26, 1936, Grubb executed a mineral deed to Frank J. Piper, conveying an undivided one-thirty-second interest in and to all of the oil and gas and other minerals in, under and upon the tract of eighty acres, subject to the oil-and-gas lease from Grubb to McGowan.

By another mineral deed, executed on May 19, 1937, Grubb conveyed an undivided one-half of one-thirty-second interest in and to all of the oil, gas and other minerals to Roy F. Gibson. By a corrected mineral deed, dated May 19, 1937, Grubb conveyed to Gibson an undivided one-eighth interest in and to all of the oil, gas and other minerals.

On December 28, 1940, Grubb executed a warranty deed to Oakie and Agnes Grubb, conveying to them forty acres of the eighty-acre tract involved in this litigation. This deed contains a clause providing "In case oil, and gas is found, and produced in paying quantities, and marketed, one-half of the same so marketed shall go to, and paid to Maymie Seaton, and Charles Seaton." The deed recites, further, that it was executed and delivered to the grantees by the grantor upon the express condition that they would contribute one half of the cost of maintenance, board and clothing necessary, and the care and attention needed for

the grantor during his lifetime and, upon his death, furnish one half of a suitable burial, and necessary medical expenses in his last illness. On the same day, by another warranty deed, Grubb conveyed the other half of the eighty acres to Maymie and Charles Seaton. This deed contains clauses identical with those in the deed to Oakie and Agnes Grubb.

Before purchasing his interest in the land, Charles Seaton testified that he examined the records with respect to Grubb's land and that he then went to the office of the Pure Oil Company and made inquiries of its attorney. He said that he relied and depended upon the records in the office of the clerk of the circuit court in making his purchase of the land. Oakie Grubb testified that he made an examination of the records concerning the title to the property in question and that he, too, checked at the Pure Oil Company's office. He testified that he did not talk with Smith about the interest claimed by him in the land before purchasing the forty acres from Grubb.

Oil was discovered and produced from the property in controversy in 1944 and the question of the ownership of the royalty oil presented itself. When Smith was advised by the Pure Oil Company that a dispute obtained as to the mineral owners and that defendants were claiming adversely, he instituted this action.

By his complaint filed on August 18, 1944, the plaintiff, Clarence T. Smith, syndicate trustee of Arbuthnot Oil & Gas Syndicate, alleged that the interest in oil and gas was erroneously stated in the deed from Grubb to himself as being "one-half of one-eighth" instead of "one-half;" that this alleged error was not discovered by him for a long time thereafter; that Grubb made a like error in another mineral deed to another person, [Gibson] which was subsequently corrected by him; that when Grubb conveyed the property to defendants he was the owner of only an undivided eleven-thirty-seconds interest in the oil and gas under the land, and that they had notice of his (plaintiff's) rights

when they purchased the property from Grubb. The relief sought was a decree (1) adjudging plaintiff to be the owner of an undivided one-half interest in the oil and gas under the premises in question, free and clear of all claims of the defendants, subject, however, to the oil-and-gas lease of the Pure Oil Company; (2) correcting and reforming the purported mistake of the scrivener in the preparation of the mineral deed dated June 4, 1936, and (3) ordering and directing defendants to execute and deliver to plaintiff a "correction" mineral deed conveying to him an undivided one-half interest in the oil and gas. The complaint concluded with a prayer for general relief. Defendants answered, denying the material allegations of plaintiff's complaint and averring that they purchased the property for a valuable consideration, without notice or knowledge of plaintiff's claim, and entered into possession, and, further, that plaintiff was guilty of *laches* in asserting his rights, if any, against them. Plaintiff's reply denied *laches* on his part and charged defendants with notice of his claim to the ownership of one half of the oil under the premises involved.

Frank J. Piper's motion for leave to intervene and plead was granted. He filed an answer admitting the allegations of plaintiff's complaint and alleged, by his counterclaim, that, on June 26, 1936, Grubb conveyed to him an undivided one-thirty-second interest in all the oil and gas under the premises involved for a consideration of eighty dollars. Piper has since died and Frank J. Piper, Jr, his only heir-at-law, was substituted as a party. Smith's answer to the counterclaim admitted its allegations. The answer of defendants to the counterclaim denied that Grubb ever conveyed to Smith an undivided one-half interest in the oil and gas.

The decree of the chancellor found that, from an examination of the mineral deed, dated June 4, 1936, and other competent evidence, it was the intention of Grubb to sell to Smith, and, conversely, the intention of Smith to pur-

chase from Grubb, an undivided one-half interest in and to the oil and gas in and under the premises, subject to the oil-and-gas lease to McGowan, and to receive one half of the royalty payable under the oil-and-gas lease precisely as if Smith had been, at the date of making the lease, the owner in fee of an undivided one-half interest in and to the lands and himself one of the lessors in the oil-and-gas lease, and that the mineral deed should be so construed; that, on June 26, 1936, it was Grubb's intention to sell to Piper, and Piper's intention to purchase, an undivided one-fourth interest in and to the oil and gas in and under the property, subject to the lease to McGowan, and to receive one fourth of the royalty, and that the mineral deed from Grubb to Piper should be so construed; that, on May 18, 1937, Grubb conveyed an undivided one-eighth interest to Gibson and that, after the execution of the deeds described, the oil and gas and other minerals in and under the premises were owned, as follows: John W. Grubb ⅛; Clarence T. Smith, Syndicate Trustee, ½; Frank J. Piper ¼; Roy F. Gibson ⅛, subject to the oil and gas lease to McGowan. The decree found, further, that, prior to purchasing the property, the grantees, Oakie Grubb and Charles Seaton, examined the records of the recorder's office in Richland County, and, in particular, the record of the mineral deed from Grubb to Smith, and that they were fully aware of, and conversant with, its terms and contents, and that neither Grubb nor Seaton made any inquiry of Smith as to the interest claimed by him in and to the oil, gas and other minerals in the property, and that, as a result of the deeds to Grubb and Seaton, the one-eighth interest of Grubb was divested and Maymie and Charles Seaton became the owners of a one-sixteenth interest and, in like manner, Oakie and Agnes Grubb, owners of a one-sixteenth interest. The decree expressly found that plaintiff had not been guilty of any *laches* in filing his complaint. Accordingly, the decree adjudged that Smith owns an undivided one-half interest in

the oil, gas and other minerals, subject to the lease held by the Pure Oil Company, free and clear of all claims of the defendants, and that he is entitled to receive one half of the one-eighth royalty payable under the terms and conditions of the oil-and-gas lease; that Piper owns an undivided one-fourth interest in the oil and gas and is entitled to one fourth of the one-eighth royalty; that Oakie and Agnes Grubb own an undivided one-sixteenth of the one-eighth royalty, and that Charles and Maymie Seaton own the same interest as Oakie and Agnes Grubb. These interests, together with the one fourth of one-eighth royalty owned by Gibson, total one eighth of the royalty. This appeal followed.

Defendants point out that the decree did not order the deed of June 4, 1936, corrected or reformed although the complaint sought this relief, and contend that the evidence recounted does not entitled plaintiff to a reformation of the deed. By his complaint, plaintiff asked, first, a construction of the challenged deed and, in particular, a decree adjudging him the owner of an undivided one-half interest in the oil and gas, free and clear of all claims of defendants, but subject to an oil-and-gas lease to the Pure Oil Company. Second, he sought a correction and reformation of the deed. Since plaintiff was adjudged the owner of an undivided one-half interest in the oil and gas, conformably to the prayer of his complaint, the relief sought by way of reformation of the deed became unnecessary and, if granted, would have been superfluous and mere surplusage. Furthermore, the complaint prayed for general equitable relief. The decisive question presented for determination is whether the decree properly construes the deed from Grubb to Smith.

The chancellor, in his findings, stated that the deed was construed on the basis of language employed in the deed itself and, secondly, on the testimony .of plaintiff and the deposition of Montgomery. Their testimony is uncontra-

dicted. Defendants invoke the familiar rule that where an estate given in the granting clause and the estate referred to in the *habendum* of a deed are so repugnant to each other as not to be susceptible of any reasonable reconciliation, the granting clause will control and the *habendum* will be rejected as void. (16 Am. Jur., Deeds, sec. 232; *Roof* v. *Rule,* 348 Ill. 370; *Nave* v. *Bailey,* 329 Ill. 235; *Coogan* v. *Jones,* 278 Ill. 279.) In each of the three cases relied upon by defendants, the granting clause in the deed contained words of inheritance. Where, however, words of inheritance are not used, the rule is that every word used in the conveyance, irrespective of where it may be found, shall be given weight in construing the instrument and the doctrine of repugnancy, namely, that subsequent words in a grant which apparently reduce the estate conveyed by the words of the grant shall be disregarded as repugnant to the grant, has no application when the words of grant are not such as would, at common law, convey an estate of inheritance. (*Noe* v. *Mosely,* 377 Ill. 152.) Section 13 of the Conveyances Act provides, "Every estate in lands which shall be granted, conveyed or devised, although other words heretofore necessary to transfer an estate of inheritance be not added, shall be deemed a fee simple estate of inheritance, if a less estate be not limited by express words, or does not appear to have been granted, conveyed or devised by construction or operation of law." (Ill. Rev. Stat. 1947, chap. 30, par. 12.) The manifest meaning of section 13 is that when words of inheritance are not used, every word, no matter where appearing in the deed must, if possible, be given weight in determining the estate granted. (*Magnolia Petroleum Co.* v. *West,* 374 Ill. 516; *Woods* v. *Seymour,* 350 Ill. 493; *Buck* v. *Garber,* 261 Ill. 378.) Again, where the granting clause in a deed does not definitely describe the estate granted and there is an *habendum* or subsequent clause which does define the estate intended to be conveyed without being repugnant to the granting clause, the inten-

tion of the grantor may be ascertained from the wording of the entire deed, including the *habendum* clause, and not from the granting clause, alone. *Anderson* v. *Stewart,* 285 Ill. 605.

No words of inheritance are used in the granting clause in the mineral deed from Grubb to Smith. Recourse to the deed discloses that it does "convey and warrant to Clarence T. Smith, Syndicate Trustee of the City of Flora." This being so, the rule invoked by defendants is inapplicable to the factual situation presented. Moreover, the deed in controversy admits of the construction that it does not contain an *habendum* clause. Following the description of the property is the statement constituting part of the granting clause that, whereas the land described in the conveyance is understood to be subject to an oil-and-gas lease in favor of Mc-Gowan, "it is intended that said outstanding lease is fully embraced in the general terms of this conveyance, so as to pass to and vest in the said Clarence T. Smith, Syndicate Trustee, one-half of one-eighth interest, not only in oil and gas, but also of royalties therein reserved to the lessor, precisely as if the said Clarence T. Smith, Syndicate Trustee, had been at the date of making of said lease, the owner in fee of an undivided one-half interest in and to the lands described, and himself one of the Lessors therein." The only language of the deed resembling an *habendum* clause is the clause following the foregoing quotation reciting that, in the event oil or gas shall not be discovered upon the property within ten years from the date of the conveyance, all rights of the grantee shall revert to the grantor. In short, although defendants seek to caption the quoted statement an *habendum* clause it is, in reality, a part of the granting clause. In construing a granting clause, all of its parts should be considered and harmonized, if possible. *Haughn* v. *Haughn,* 296 Ill. 305.

The primary purpose in construing deeds is to ascertain the intention of the parties from a construction of the in-

strument in question. (*Anderson* v. *Stewart,* 285 Ill. 605.) Since it cannot be presumed that words or terms in a conveyance were employed without a meaning, or having some effect accorded them, a construction will be adopted, if legally permissible, giving effect not only to the instrument as a whole but to each word and term used, rejecting none as meaningless, repugnant or surplusage. (*Rhomberg* v. *Texas Co.* 379 Ill. 430; *Magnolia Petroleum Co.* v. *West,* 374 Ill. 516.) The circumstances attending the transaction, the situation of the parties, the objects which they had in mind, as shown by the deed, as well as those they did not have in mind and could not attain, merit consideration in construing deeds. (*Texas Co.* v. *O'Meara,* 377 Ill. 144; *Magnolia Petroleum Co.* v. *West,* 374 Ill. 516.) Application of these cardinal canons of construction leads irresistibly to the conclusion that the decree assailed by defendants properly construes the deed from Grubb to plaintiff. First, the grantor, Grubb, conveys to plaintiff "one-half of one-eighth interest in oil and gas now or, at any time hereafter, lying in or under * * *." The word "royalty" is not used in this part of the deed but only the words "oil and gas." Then follows the legal description of the land and the paragraph specifically expressing the intention of the grantor to convey such an interest to plaintiff as to place him in precisely the same position as if he had been, at the date of making the lease, the owner in fee of an undivided one-half of one-eighth interest, not only in oil and gas but, also, of royalties reserved to Grubb. The first oil-and-gas lease from Grubb to McGowan provided that Grubb was to receive one eighth of the oil as his royalty. Had plaintiff then been the owner of one half of the property, and Grubb the owner of the other half, and had they both joined in the execution of the lease to McGowan, plaintiff would have been entitled to one half of the royalty and Grubb the other half. This is what the quoted language

of the deed expressly states, namely, that plaintiff's interest shall be the same as if he had been the owner of a one-half interest in the land and one of the lessors when the lease was executed. We regard the language of Grubb's deed to plaintiff remarkably clear and admitting only of the construction found by the decree of the circuit court. The evidence narrated relative to the circumstances attending the execution of the deed from Grubb to plaintiff on June 4, 1936, the situation of the parties at the time and the objects which they sought to attain, support the conclusion that Grubb intended to convey to plaintiff and that the latter, in turn, reasonably expected to receive an undivided one-half interest in Grubb's one-eighth interest in the oil and gas and the same interest in the royalty.

The intention of the parties is entirely clear. Before executing the lease to McGowan, Grubb owned the entire interest in the oil and gas. By this first lease, Grubb conveyed to McGowan, $28/32$, or $7/8$, of the oil and gas produced, leaving him the owner of $4/32$, or $1/8$. Of this, he conveyed one half, or $1/16$, of the whole interest to plaintiff; to Piper, $1/32$ of all the oil and gas; to Gibson, $1/64$, to Oakie and Agnes Grubb, $1/128$, and to Maymie and Charles Seaton, $1/128$. As applied to his own royalty interest, he conveyed to plaintiff, $1/2$, to Piper, $1/4$, to Gibson, $1/8$, to Oakie and Agnes Grubb, $1/16$, and to Maymie and Charles Seaton, $1/16$. The actual contention of defendants is that Grubb conveyed to plaintiff only $1/16$ of the royalty and to Piper $1/32$. If but $1/16$ of the royalty was conveyed to plaintiff for $100, he would have been paying $100 for $1/128$ of the whole production, or one barrel out of every 128 barrels. Similarly, if only $1/32$ of the royalty was conveyed to Piper for $80, he would have been paying $80 for $1/256$ of the entire production, or one barrel out of every 256 barrels. In the first instance, the valuation placed upon the entire royalty interest would have been $12,800 and in the second, $20,480.

The evidence adduced discloses that, three or four months prior to the execution of the deeds to plaintiff and Piper, the land leased for thirty cents per acre, that no oil was being produced in Richland County, and that the territory was generally considered "rank wildcat territory." The fallacy of defendants' contention is obvious. It cannot be said that the values set forth were in the minds of the parties in June, 1936, or that it was the intention of the parties that only ⅟₁₆ and ⅟₃₂ of the royalty were conveyed to plaintiff and to Piper, respectively.

Defendants argue, further, that they are *bona fide* purchasers of the property for valuable consideration and that relief will not be granted against them because of misdescription in Grubb's deeds to plaintiff and Piper. It is true, as defendants urge, that the record of a deed is notice only so far as the premises or interest conveyed are correctly described, against *bona fide* purchasers from the grantor without notice, actual or constructive, of the grantee's rights. (*Lines* v. *Willey,* 253 Ill. 440; *Barton* v. *Mayers,* 183 Ill. 360; *Harms* v. *Coryell,* 177 Ill. 496.) In the *Harms* and *Lines cases* there was a misdescription of land and not of interest. In the *Barton case,* there was no proof, actual or constructive, of misdescription. Neither the law invoked nor the evidence supports the contention that defendants were innocent purchasers. The general rule is that purchasers of real estate are chargeable with knowledge of the law and those things appearing in the record of the chain of title. It is the duty of a purchaser of land to examine the record, and he is chargeable with notice of whatever is shown by the record. (*Clark* v. *Leavitt,* 335 Ill. 184.) One having notice of facts which would put a prudent man on inquiry is chargeable with knowledge of other facts he might have discovered by diligent inquiry. Whatever is notice enough to excite the attention of a prudent man and put him on his guard is notice of every-

thing to which such inquiry might have led and every unusual circumstance is a ground of suspicion and demands investigation. (*Reed* v. *Eastin*, 379 Ill. 586; *Mason* v. *Mullahy*, 145 Ill. 383.) Here, defendants, Charles Seaton and Oakie Grubb, examined the records in the office of the recorder of deeds and, in particular, the record of the deed of Grubb to plaintiff before they purchased the land. They also visited the office of the Pure Oil Company. On the other hand, neither made inquiries of plaintiff to ascertain what interest he claimed under his mineral deed. Under the circumstances present in this case, a prudent person would have sought light from plaintiff. This, defendants failed to do. They were not innocent purchasers for value.

It is true that Grubb conveyed to defendants all the oil and gas in 1940. These deeds were, however, subject to the prior deeds to plaintiff, Piper and Gibson and only conveyed such interest as Grubb owned in 1940 and were void as to the excess. Where an owner of a permanent present interest in land purports, by deed, as here, to grant a greater estate than he actually owns, the conveyance is void only as to the excess and is operative to pass the estate which the grantor has. *Triger* v. *Carter Oil Co.* 372 Ill. 182.

The decree of the circuit court of Richland County is modified by striking from paragraph (a), adjudging Smith to own "an undivided one-half ($\frac{1}{2}$) interest in the oil, gas and other minerals in and under the premises hereinbefore described," the words "and other minerals." In all other respects the decree is affirmed.

*Decree modified and affirmed.*

Mr. JUSTICE GUNN, specially concurring: I agree with the result reached, but not with all that is said in the opinion.