OPINION
Melonie Johnson and Sandra Patton were the executors of the estate of John Erwin ("Estate"). The Estate held shares in the Sunset Cemetery Trust, which owned and operated Sunset Cemetery ("Cemetery"). Patton and Johnson were also the sole beneficiaries of the Edward F. Leach Trust ("the Leach Trust"), the corpus of which consisted of approximately one hundred forty-five acres of undeveloped property ("Property") adjacent to the Cemetery. Plaintiff, John Carnahan, was the successor trustee of the Leach Trust.
In 1995, Patton and Johnson decided to sell the Cemetery, and to achieve that end retained Mary Carr, an experienced real estate agent and operator of cemetery properties, to solicit potential purchasers. Carr was instructed that any sale of the Cemetery must also include the sale of the Property. Accordingly, prospective purchasers were informed that in order to purchase the Cemetery, they would also be required to purchase the Property.
Carr solicited bids and ultimately received offers from several different bidders, including defendants.[1] After several rounds of competitive bidding, defendants ultimately submitted a bid of $2.9 million for the Cemetery, $900,000 for the Property, and $980,000 ($490,000 per beneficiary) for fifteen-year noncompete agreements. Defendants also agreed to repay $208,000 in promissory notes payable by the trust to Patton and Johnson.
On June 10, 1996, defendants submitted a letter of intent with regard to the purchase of the Property. The letter of intent provided, in relevant part, that the transaction was conditioned upon satisfactory completion of due diligence by defendants, approval of the sale by the Probate Court of Madison County, and completion of the sale of the Cemetery to defendants. Plaintiff signed the letter of intent on June 17, 1996, and returned it to defendants with an enclosed letter averring that he did not want to incur the expense of obtaining probate court approval for the sale of the Property until defendants had performed their due diligence. Plaintiff urged defendants to draft a formal contract for the purchase of the Property after due diligence had been completed.
By letter dated July 1, 1996, defendants requested, inter alia, that plaintiff complete an "Environmental Information Questionnaire" in order to assist defendants with their environmental evaluation of the Property. By letter dated July 30, 1996, plaintiff informed defendants that he was returning the questionnaire because "I know absolutely nothing about the property. I am merely the Successor Trustee to Robert R. Richards, I make no representations whatever as to the condition of the property or its past use. SCI will simply have to satisfy itself as to environmental issues."
On July 26, 1996, defendants sent a letter and draft purchase agreement for the Property to plaintiff. The letter urged plaintiff to review the agreement and make any necessary changes. The draft purchase agreement contained the following representation and warranty (among others):
 Section 5.11. Flood Plain. The property does not lie in, nor is the Property affected by the 100 year flood plain or any floodway as the same have been established by governmental authorities or pursuant to governmental regulations.
In addition, Sections 5.8 and 5.9 of the draft purchase agreement represented and warranted that no hazardous substances, asbestos, polychlorinated biphenyls (PCB's), or underground storage tanks were located on the Property.
In a letter to defendants dated August 30, 1996, plaintiff wrote:
 I am enclosing a draft of a proposed Real Estate Purchase Agreement patterned almost entirely after the one that you sent to me with your letter of July 26. Also enclosed is your draft with my changes marked in red.
 The most substantive changes are to your §§ 5.8 and 5.9, which have been eliminated. I, as Trustee, make no representations whatever as to the environmental condition of the property, the presence or absence of hazardous substances, asbestos, PCB's, etc. I know about as much about this land as you do, so SCI will simply have to satisfy itself as to the environmental issues. I have added language to that effect as a new § 9.1.
Plaintiff made no changes to the floodplain representation and warranty.
On September 19, 1996, the parties executed the final negotiated purchase agreement. Section 5.9[2] of the agreement contained the aforementioned floodplain representation and warranty. On October 1, 1996, plaintiff filed the petition in the Madison County Probate Court seeking approval to sell the Property. On October 14, 1996, defendants and the Estate executed a purchase agreement for the Cemetery. On October 24, 1996, defendants received a preliminary survey of the Property. Defendants obtained a final survey during the first week of November 1996. Both surveys revealed that a portion of the Property is located in a floodplain. The sale of the Cemetery closed on October 30, 1996. Defendants sent plaintiff a copy of the survey on November 13, 1996.
On April 6, 1998, plaintiff received court approval for the sale of the Property. See Carnahan v. Johnson (1998), 127 Ohio App.3d 195. By letter dated April 24, 1998, defendants informed plaintiff, in pertinent part:
 * * * Because the Real Estate Purchase Agreement warrants against any portion of the property being within floodplain, and, from looking at the survey and guestimation, approximately 20% to 25% is so encumbered, and further because the area so encumbered effectively "cuts off" the major portion of the property from the current roadway access, we feel, at least, that some consideration is due us from a purchase price standpoint. You will recall that I had raised this issue with you over a year ago. Our understanding from talking to the local Prairie Township officials is that the portion within Flood Zone "AE" cannot be built upon without obtainment of a conditional use permit from the Township's Board of Zoning Appeals, which apparently involves a public hearing and complete discretion of the Board for granting of such a permit. Effectively therefore, we, and any potential construction or purchase lender, would consider that property unusable. Please give us your thoughts on this subject.
By letter dated July 22, 1998, plaintiff acknowledged that a portion of the Property was located in a floodplain, but attempted to minimize the effect of the encumbrance:
 As you can see, only a small area of the property is affected by the floodway. Given the terrain, it is unlikely that SCI would want to use that small portion for development. Nevertheless, the property is currently zoned agricultural. Permitted uses for agricultural land include a cemetery. A cemetery is a conditional use which requires application to the zoning office. But given the fact that Sunset is already there, it would seem unlikely that such development would be a problem. Additional permitted uses included all of those set forth on the enclosed list.
The parties attempted to negotiate a resolution to the dispute, but no compromise could be reached. Ultimately, defendants declined to purchase the Property, alleging that plaintiff breached the floodplain representation and warranty.
On May 27, 1999, plaintiff filed an amended complaint alleging breach of contract and fraud. The parties filed cross-motions for summary judgment. After an oral hearing, the trial court granted defendants' motion for summary judgment. Plaintiff has appealed the trial court's judgment, setting forth a single assignment of error, as follows:
 The Trial Court Erred in Granting SCI's Summary Judgment Motion and Denying the Trustee's Summary Judgment Motion by (1) Ignoring Critical Evidence, (2) Misinterpreting the parties' Agreement and (3) Failing to Construe the Evidence in a Light Most favorable to the Nonmoving Party as Required Under Ohio Rule of Civil Procedure 56.
The measure by which summary judgment is granted is set forth in Civ.R. 56(C), which provides, in relevant part, as follows:
 * * * Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor. * * *
Thus, summary judgment is appropriate only where the evidence before the court demonstrates that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. Tokles Son, Inc. v. Midwestern Indem. Co. (1992), 65 Ohio St.3d 621, 629, citing Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64,65-66.
In Dresher v. Burt (1996), 75 Ohio St.3d 280, the Supreme Court of Ohio stated that the moving party, on the ground that the nonmoving party cannot prove its case, has the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential elements of the nonmoving party's claim. Once the moving party satisfies this initial burden, the nonmoving party has a reciprocal burden to set forth specific facts showing there is a genuine issue for trial. "* * * [T]he purpose of summary judgment is not to try issues of fact, but rather to determine whether triable issues of fact exist." Viock v. Stowe-Woodward Co. (1983), 13 Ohio App.3d 7, 15.
In reviewing a trial court's disposition of a motion for summary judgment, an appellate court applies the same standard as that applied by the trial court. Maust v. Bank One Columbus, N.A. (1992),83 Ohio App.3d 103, 107. An appellate court reviews a summary judgment disposition independently and without deference to the trial court's determination. Brown v. Scioto Cty. Bd. of Commrs. (1993),87 Ohio App.3d 704, 711. Thus, in determining whether a trial court properly granted a summary judgment motion, an appellate court must review the standard for granting summary judgment set forth in Civ.R. 56, as well as the applicable law. Summary judgment is a procedural device to terminate litigation, so it must be awarded cautiously, with any doubts resolved in favor of the nonmoving party. Murphy v. Reynoldsburg
(1992), 65 Ohio St.3d 356, 358-359.
By his assignment of error, plaintiff first argues that summary judgment was inappropriate as to his fraud claim. Specifically, plaintiff contends that defendants became aware, prior to sending the initial draft of the purchase agreement to plaintiff, that a portion of the Property was located in a floodplain, intentionally failed to disclose that information to plaintiff, and then intentionally inserted the floodplain representation in the draft purchase agreement in order to induce a breach by plaintiff, thereby allowing defendants to avoid its obligation to purchase the Property. Plaintiff asserts that defendants were under a duty to disclose the floodplain information to him because defendants were aware that he knew nothing about the Property and because both parties understood that plaintiff reposed a special trust and confidence in defendants that defendants would disclose any information obtained regarding the Property. Defendants assert that the parties entered into an arm's-length business transaction that did not give rise to a fiduciary relationship or other similar relationship of trust and confidence; thus, defendants owed no duty to disclose to plaintiff the condition of the Property.
In order to prevail on his claim for common law fraud, plaintiff must prove the following elements: (a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance. Russ v. TRW, Inc. (1991), 59 Ohio St.3d 42, 49.
In State v. Warner (1990), 55 Ohio St.3d 31, 53, the Ohio Supreme Court addressed the scope of the duty to disclose where fraud is alleged. The court discussed Chiarella v. United States (1980), 445 U.S. 222, wherein the United States Supreme Court discussed the possible situations in which a duty to disclose may arise. Warner, supra, at 53. The Warner
court quoted Chiarella, wherein it was held that:
 "* * * [O]ne who fails to disclose material information prior to the consummation of a transaction commits fraud only when he is under a duty to do so. And the duty to disclose arises when one party has information that the other [party] is entitled to know because of a fiduciary or other similar relation of trust and confidence between them.' * * *" (Footnote omitted.) Id. at 228.
 Furthermore, the court noted that "[w]hen an allegation of fraud is based upon nondisclosure, there can be no fraud absent a duty to speak. * * *" Id. at 235. [Warner, supra, at 54.]
A fiduciary relationship is one "in which special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust. Ed Schory Sons, Inc. v. Soc. Natl. Bank (1996),75 Ohio St.3d 433, 442, quoting In re Termination of Employment of Pratt
(1974), 40 Ohio St.2d 107, 115. "* * * A fiduciary relationship may be created out of an informal relationship, but this is done only when both parties understand that a special trust or confidence has been reposed."Umbaugh Pole Bldg. Co. v. Scott (1979), 58 Ohio St.2d 282, paragraph one of the syllabus.
Generally, when parties act to protect their own interests and operate at arm's-length from one another, their relationship is not fiduciary in nature. Masdea Enterprises, Inc. v. The Spaghetti Place, Inc. (Oct. 14, 1980), Franklin App. No. 80AP-231, unreported. "[I]n business transactions where parties deal at arm's length, each party is presumed to have the opportunity to ascertain relevant facts available to others similarly situated and, therefore, neither party has a duty to disclose material information to the other." Blon v. Bank One, Akron, N.A.
(1988), 35 Ohio St.3d 98, 101. Moreover, it is well-established that no fiduciary relationship exists between the buyer and seller of real estate. Britton v. Connally Roofing Remodeling (Dec. 17, 1998), Cuyahoga App. No. 73011, unreported, citing Layman v. Binns (1988),35 Ohio St.3d 176.
As noted previously, plaintiff argues that defendants had a duty to disclose the floodplain information because defendants were aware that plaintiff knew nothing about the Property. Plaintiff cites his letter of July 30, 1996, in support of his contention. However, plaintiff's letter was sent in response to defendants' requests for information about the Property's environmental condition. Indeed, the letter specifically states that defendants would have to satisfy themselves as to environmental issues. The letter did not require defendants to conduct due diligence on plaintiff's behalf, nor did it require defendants to disclose any information obtained regarding the Property.
Plaintiff also contends that defendants had a duty to disclose the floodplain information because they understood that plaintiff had reposed a special trust and confidence in them. In his deposition testimony, plaintiff averred that he had a "special trust and confidence that whatever information they [defendants] passed on to me was going to be correct. They weren't deliberately going to mislead me. I had assumed that I was dealing with upright, straightforward people." (Carnahan depo. at 48.) Plaintiff's alleged "special trust and confidence" is not enough to create a fiduciary duty. In essence, plaintiff seeks to impose a unilateral fiduciary duty based on the universal expectation that one party will not defraud another. If a fiduciary duty may be imposed on such a basis, then every transaction between every party in virtually every circumstance will create a fiduciary relationship. Plaintiff has cited no authority in support of such a broad claim.
Moreover, plaintiff has not presented any evidence demonstrating that defendants understood that plaintiff was reposing a "special trust or confidence" in them. "The assertion that one party reposed a `special trust' in the other party is insufficient as a matter of law without the allegation that both parties understood that the fiduciary relationship existed." Nichols v. Chicago Title Ins. Co. (1995), 107 Ohio App.3d 684, at 699. To the contrary, it is undisputed that defendants never understood that plaintiff reposed a special trust and confidence in them. (Burleson affidavit at paragraph 2.)
Moreover, the summary judgment materials demonstrate that both parties engaged in an arm's-length business transaction in which both were operating to protect their own interests. The parties engaged in lengthy negotiations concerning the purchase price of the Property, as well as the specific terms of the purchase agreement. Plaintiff is an experienced attorney who has practiced law for over forty years and had counsel available to him throughout the entire process. The arm's-length nature of the transaction is particularly demonstrated by plaintiff's objections to Sections 5.8 and 5.9 of the draft purchase agreement, which contained representations and warranties regarding the environmental condition of the Property. These warranties were removed from the final purchase agreement at plaintiff's demand. Plaintiff did not, however, demand a removal of, or even a change to, the floodplain representation and warranty.
Further, the purchase agreement specifically conditioned defendants' obligation to purchase the Property on the representation and warranty that the Property was not in a floodplain. This express representation and warranty and condition precedent to which plaintiff agreed put plaintiff on notice to investigate the Property's floodplain condition. "* * * '* * * One having notice of facts which would put a prudent man on inquiry is chargeable with knowledge of other facts he might have discovered by diligent inquiry. Whatever is notice enough to excite the attention of a prudent man and put him on his guard is notice of everything to which such inquiry might have led * * *.' * * *" WayneBldg. Loan Co. v. Yarborough (1967), 11 Ohio St.2d 195, 202, quotingSmith, Trustee, v. Grubb (1949), 402 Ill. 451. Plaintiff's failure to investigate the floodplain condition of his own property cannot impose an otherwise nonexistent duty on defendants to inform plaintiff of such a condition.
In short, this court finds that there is simply no evidence, which if reasonably construed, would support a finding that defendants had a fiduciary relationship or other similar relationship of trust and confidence with plaintiff. Therefore, we find, as a matter of law, that defendants had no duty to disclose information regarding the floodplain to plaintiff. Accordingly, the trial court properly granted summary judgment on plaintiff's fraud claim.
Plaintiff next argues that the trial court improperly granted summary judgment to defendants on plaintiff's breach of contract claim. Specifically, plaintiff argues that the trial court erred in determining that defendants were not required to purchase the Property because plaintiff breached the purchase agreement by giving a false representation and warranty regarding the floodplain.
It is well-established that the interpretation of a written agreement is a matter of law to be determined by the court. Alexander v. BuckeyePipe Line Co. (1977), 49 Ohio St.2d 158, paragraph one of the syllabus. The paramount objective in construing a written agreement is to ascertain the parties' intent. Aultman Hosp. Assn. v. Community Mut. Ins. Co.
(1989), 46 Ohio St.3d 51, 53. The agreement must be given a just and reasonable construction which carries out the parties' intent as evidenced in the contractual language. Skivolocki v. East Ohio Gas Co.
(1974), 38 Ohio St.2d 244, paragraph one of the syllabus. The parties' intent is presumed to reside solely within the language employed in the agreement. Kelly v. Med. Life Ins. Co. (1987), 31 Ohio St.3d 130, paragraph one of the syllabus. Words and phrases appearing in a contract which are not specifically defined therein should be given their common, ordinary and usual meaning. Monsler v. Cincinnati Casualty Co. (1991),74 Ohio App.3d 321, 329. It is well-settled that "the fact that the parties adopt conflicting interpretations of the contract in the throes of litigation does not create ambiguity where none exists." Steward v.Champion Int'l. Corp. (C.A.11, 1993), 987 F.2d 732, 734.
As noted previously, Section 5.9 of the purchase agreement contains the following representation and warranty: "[t]he Property does not lie in, nor is the Property affected by the one hundred year floodplain or any floodway as the same have been established by governmental authorities or pursuant to government regulations." It is undisputed that approximately forty acres of the one hundred forty-five acre Property is located in a floodplain. Plaintiff argues that, because the term "Property" is defined in Section 1.1 of the agreement as "the approximately 145.4 acre tract of land," the floodplain representation and warranty is triggered only if all one hundred forty-five acres are located in a floodplain. This court cannot agree with plaintiff's contention. To accept such a proposition would, in our view, be contrary to our duty to give a just and reasonable construction to the language contained in the purchase agreement and to construe the agreement with reference to its objective and purpose. Accepting plaintiff's strained interpretation of the term "Property" as it is used in Section 5.9 would lead to the unjust and unreasonable conclusion that, even if one hundred forty-four of the one hundred forty-five acres were located in a floodplain, the floodplain representation and warranty would still not be triggered because the floodplain did not encompass the entire Property. Such an absurd result could not reasonably have been intended by the parties.
Further, we agree with the trial court's determination that the operative word in Section 5.9 is "lie," which is defined as "to be found, or be located in a particular area or place." Webster's Encyclopedic Dictionary of the English Language, 2nd Ed. (1996), 827. It is undisputed that forty acres of the Property is located in a floodplain; thus, the Property "lies" in a floodplain as that term is used in Section 5.9.
Plaintiff further argues that the representation and warranty was never triggered because the floodplain does not "negatively" affect the entire one hundred forty-five acre parcel. As noted previously, this court does not construe the purchase agreement to require that the entire one hundred forty-five acre tract must be "affected by" the floodplain in order to trigger the representation and warranty. Further, the term "affect," as used in Section 5.9, does not connote a "negative" affect. "Affect" is defined as "to act on; produce an effect or change in." Webster's, supra, at 24. It is undisputed that the floodplain "produce[s] an effect or change in" the Property; thus, the Property is "affected" by the floodplain, as that term is used in Section 5.9.
Plaintiff next argues that the trial court erred in failing to apply the doctrine of substantial performance. Specifically, plaintiff contends that, because both conditions precedent under the contract were fulfilled, i.e., obtaining probate court approval for the sale of the Property and the sale of the Cemetery to defendants, plaintiff's "nonmaterial" breach of the floodplain representation and warranty did not relieve defendants of the obligation to purchase the Property. Plaintiff contends that the "technical" breach of the floodplain representation and warranty was not material to the transaction because defendants were never really interested in obtaining the Property and agreed to purchase it only to acquire the Cemetery. While the summary judgment materials support plaintiff's contention that defendants agreed to purchase the Property only to acquire the Cemetery, the parol evidence rule prohibits the introduction of the parties' alleged intent or agreement which contradicts the plain language of the written purchase agreement. The Ohio Supreme Court explained the parol evidence rule in EdSchory Sons, supra, at 440:
 * * * The parol evidence rule is a rule of substantive law that prohibits a party who has entered into a written contract from contradicting the terms of the contract with evidence of alleged or actual agreements. * * * "When two parties have made a contract and have expressed it in a writing to which they have both assented as the complete and accurate integration of that contract, evidence, whether parol or otherwise, of antecedent understandings and negotiations will not be admitted for the purpose of varying or contradicting the writing." [Citations omitted.]
 As is apparent from the foregoing, the parol evidence rule will not be overcome by merely alleging that a statement or agreement made prior to an unambiguous written contract is different from that which is contained in the contract. Stated differently, "an oral agreement cannot be enforced in preference to a signed writing which pertains to exactly the same subject matter, yet has different terms." [Citations omitted.]
Article V of the purchase agreement expressly and unambiguously provides that all representations and warranties including the floodplain representation and warranty are material: "In order to induce Purchaser to enter into this Agreement, Seller hereby makes the following material
representations and warranties, all of which shall be deemed to have been made again as of the Closing[.]" (Emphasis added.) Defendants cannot now contradict the unambiguous language of the purchase agreement by claiming that the parties did not intend for the floodplain representation and warranty to be material. Sheet Metal Workers Natl. Pension Fund v.Bryden House Ltd. (1998), 130 Ohio App.3d 132, 138-139.
Finally, plaintiff claims that defendants waived their right to assert the floodplain representation and warranty as a defense to performance because defendants did not raise the issue until April 1998, some eighteen months after the purchase agreement was executed.
The purchase agreement specifically provides that defendants could waive their right to assert the floodplain representation and warranty as a defense to performance only if such waiver were made in writing: Section 7.1 states:
 Conditions to Obligation of Purchaser. The obligation of Purchaser to consummate the purchase and sale of the Property as provided for in this Agreement is subject to the satisfaction of the following conditions prior to the Closing Date, unless waived in writing by Purchaser:
 (a) Representations and Warranties. The representations and warranties of Seller set forth in this Agreement shall be true and correct as of the date of this Agreement, and (except to the extent such representations and warranties speak as of an earlier date) as of the Closing Date, as though made on and as of the Closing Date. [Emphasis added.]
The record demonstrates that defendants never waived the floodplain representation and warranty in writing as required by Section 7.1(a). To accept plaintiff's contention that the parties intended that defendants could waive the floodplain representation and warranty other than in writing would directly contradict the written purchase agreement in violation of the parol evidence rule. Aultman, supra, at 53. Consequently, defendants cannot be deemed to have waived the representation and warranty. See Equitable Life Assurance Society Of theUnited States v. The Citizens State Bank (Apr. 7, 1982), Hamilton App. No. C-810546, unreported.
Moreover, Section 7.1(a) of the purchase agreement specifically provides that the representations and warranties shall be true both as of the date the purchase agreement was executed and on the date of closing. In addition, Section 8.2 provides that "[t]he representations and warranties of the parties made in this Agreement shall survive the Closing and any investigation by the parties with respect thereto, for a period of three (3) years from and after the Closing Date." Thus, the purchase agreement expressly entitles defendants to enforce the representation and warranty up to and including the date of closing and for three years thereafter. Indeed, defendants refused to close on the Property specifically because of the breach of the floodplain representation and warranty, as it was entitled to do under the express terms of Sections 7.1(a) and 8.2. Accordingly, defendants did not waive the right to assert the breach of the representation and warranty as a defense to performance.
Based on the foregoing discussion, this court finds that the trial court correctly found that because forty acres of the Property "lie[s] in * * * [and] is * * * affected by" a floodplain, plaintiff breached the representation and warranty given in Section 5.9 of the purchase agreement and that such breach relieved defendants of the obligation to purchase the Property. In particular, this court concurs in the well-reasoned conclusion reached by the trial court:
 Carnahan, an attorney for more than thirty-five years, alleges that the Defendants' slight of hand inclusion of Section 5.9 is somehow intentional, actionable and compensable. Carnahan erroneously claims that the Defendants should have either called the language of Section 5.9 to his attention or overlooked it because he was unfamiliar with the particulars of the Property. Such is not the law of contracts. The Court is hard pressed to find a duty on the part of Defendants to save Carnahan from himself or an improvident contract. In an arm's length business transaction, sophisticated contracting parties, represented by counsel, "are presumed to be aware of the contract's language and are properly bound by it." Mon-Rite Construction Co., Inc. v. Northeast Ohio Regional Sewer District (1984), 20 Ohio App.3d 255, 259.
For the foregoing reasons, plaintiff's assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is hereby affirmed.
 ____________ McCORMAC, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
DESHLER and McCORMAC, JJ., concur.
[1] Defendants SCI Ohio Funeral Services, Inc. ("SCI Ohio") and STE Acquisition Corporation ("STE") are subsidiaries of defendant Service Corporation International ("Service Corp"). SCI Ohio manages funeral and burial operations throughout Ohio. STE was incorporated by Service Corp. for the purpose of owning the Cemetery. Hereinafter, SCI Ohio, STE, and Service Corp. will be collectively referred to as "defendants."
[2] Section 5.11 of the July 26, 1996 draft purchase agreement was renumbered 5.9 in the final executed version due to plaintiff's deletion of Sections 5.8 and 5.9.